Judge CRAWFORD
delivered the opinion of the Court.
Contrary to his pleas, Appellant was convicted by a military judge sitting as a general court-martial of conspiracy to violate a general order, failure to obey a lawful general order, failure to obey a lawful order, making a false official statement, and being drunk on duty, in violation of Articles 81, 92, 107, and 112, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 892, 907, 912 (2000). Appellant was found not guilty of involuntary manslaughter arising from the same circumstances. Appellant was sentenced to confinement for five months, reduction to pay grade E-l, and a bad-conduct discharge. The convening authority approved the sentence as adjudged and, except for the bad-conduct discharge, ordered it executed. The United States Navy-Marine Corps Court of Criminal Appeals affirmed the findings and sentence.

STATEMENT OF THE ISSUES

On November 14, 2005, this Court granted review of the following issues:
I. WHETHER APPELLANT WAS DENIED THE OPPORTUNITY TO DEFEND HIMSELF AGAINST CHARGE I WHERE THE MILITARY JUDGE’S FINDINGS OF GUILTY BY EXCEPTIONS AND SUBSTITUTIONS RESULTED IN A MATERIAL VARIANCE.
II. WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE FAILED TO SUPPRESS APPELLANT’S STATEMENT IN ACCORDANCE WITH THIS COURT’S RULING IN UNITED STATES V. McOMBER, 1 M.J. 380 (C.M.A.1976), AND THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
III. WHETHER APPELLANT HAS BEEN DENIED HIS DUE PROCESS RIGHT TO TIMELY REVIEW OF HIS APPEAL.[1]

STATEMENT OF FACTS

At the time of the offenses, both Appellant and Staff Sergeant (SSgt) Charles D. Teffeau, Jr. were recruiters in the United States Marine Corps assigned to the recruiting sub *120 station in Wichita, Kansas. JT and JK were recruits awaiting entry through the delayed entry program. Appellant originally tried to recruit JK when she was in high school. After failing the Armed Services Vocational Aptitude Test, JK enrolled in Coffeyville Community College, which was outside Appellant’s recruiting district. JK was eventually able to pass the aptitude test and enrolled in the Marine Corps through SSgt Raymond Sutton, the local recruiter in Coffeyville. Although JK had not enlisted in his recruiting district, Appellant maintained communications with her. SSgt Sutton complained about the communication between Appellant and JK and Appellant was ordered to have no further contact with her.
The incidents in this case occurred on January 3, 1997. Appellant and SSgt Teffeau had worked part of the day interviewing potential recruits in Arkansas City. The two recruiters had a government vehicle and were planning to meet JT and JK at JT’s residence to celebrate JK’s acceptance to boot camp. JK was scheduled to ship to boot camp on January 6, 1997. Before meeting the two recruits, Appellant and SSgt Teffeau stopped at a gas station and purchased a ease of beer, which they put into the trunk of the government vehicle. They then proceeded to JT’s residence.
While at JT’s residence, Appellant and SSgt Teffeau consumed an unspecified quantity of bourbon and Coke.[2] JK consumed an unspecified amount of schnapps. JT did not consume alcohol because she had to work later that day. After approximately three hours, JT had to go to work and asked her companions to leave. Appellant, SSgt Teffeau, and JK decided to go to Winfield Lake. As her friends left, JT overheard Appellant tell SSgt Teffeau, “Grab the beer and let’s go ...” Appellant and JK rode in JK’s Ford Mustang to the lake, while SSgt Teffeau followed in the government vehicle.
When they arrived at Winfield Lake, Appellant and JK each consumed at least one of the beers. They did not stay long at Win-field Lake (five minutes according to SSgt Teffeau). Appellant and JK left in her Mustang while SSgt Teffeau drove the government vehicle. As they departed the lake area, JK’s car slid off the road, struck a tree, and went into Winfield Lake. JK was killed in the accident and Appellant suffered cracked ribs, a concussion, lacerations, and abrasions. JK’s blood-alcohol content (BAC) was .07 grams of alcohol per 100 milliliters of blood. Appellant’s BAC was .15 grams per 100 milliliters of blood.

Issue I

Facts Specific to Issue I

Appellant was arraigned under the following charge:
Charge I, violation of the UCMJ, Article 81 and the single specification: In that Staff Sergeant James H. Finch on active duty did at or near Winfield, Kansas on or about 3 January 1997 conspire with Staff Sergeant Charles E. Teffeau, Jr., U.S. Marine Corps, to commit an offense under the Uniform Code of Military Justice to wit: Providing alcohol for consumption to a person enrolled into the delayed-entry program in violation of a general order to wit: Marine Corps Recruit Depot, San Diego order 1100.4(alpha), paragraph 6(d) dated 21 May 1992; and in order to effect the object of the conspiracy Staff Sergeant Finch planned with Staff Sergeant Teffeau to meet and consume alcohol with [JK] and [JT], persons enrolled in the delayed-entry program. And Staff Sergeant Finch and Staff Sergeant Teffeau purchased Bud Light beer at the Phillips 66 service station in Winfield, Kansas, and transported that beer to the [T] residence.
When announcing his findings, the military judge excepted the words, “Staff Sergeant Finch planned with Staff Sergeant Teffeau to meet and consume alcohol with [JK] and [JT], persons enrolled in the delayed-entry program” and “Staff Sergeant Finch and *121 Staff Sergeant Teffeau purchased Bud Light Beer at the Phillips 66 Service Station in Winfield, Kansas, and transported that beer to the [T] residence.” He substituted these words:
Staff Sergeant Finch and Staff Sergeant Teffeau agreed to accompany [JK], a person enrolled in the delayed-entry program, to the Winfield City Lake for the purpose of talking and consuming Bud Light Beer that Staff Sergeant Finch had recently purchased at the Phillips 66 service station in Winfield, Kansas, and Staff Sergeant Finch, Staff Sergeant Teffeau, and [JK] did thereafter drive in two separate vehicles to the Winfield City Lake where Staff Sergeant Finch and [JK] did consume some of the aforesaid Bud Light Beer.

Discussion

Appellant’s trial defense counsel did not object to the exceptions and substitutions at trial. Failure to object at trial constitutes waiver of that issue.[3] When an objection is waived at trial, it can only be reviewed by establishing plain error. In United States v. Powell, 49 M.J. 460, 463 (C.A.A.F.1998), this Court set forth the three elements for the plain error test: (1) that there was an error; (2) that the error was plain, that is, clear or, equivalently, obvious; and (3) the plain error affected substantial rights. In this case, we hold that there was no clear error on the part of the military judge. In doing so, we utilize this Court’s material variance test in our plain error analysis.[4]
“To prevail on a fatal-variance claim, appellant must show that the variance was material and that it substantially prejudiced him.” United States v. Hunt, 37 M.J. 344, 347 (C.M.A.1993). A variance that is “material” is one that, for instance, substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment of the offense. See United States v. Teffeau, 58 M.J. 62, 66 (C.A.A.F.2003); R.C.M. 918(a)(1). When applying this two-part test, this Court has placed an increased emphasis on the prejudice prong, noting that “Even where there is a variance in fact, the critical question is one of prejudice.” United States v. Lee, 1 M.J. 15, 16 (C.M.A.1975) (citing United States v. Craig, 8 C.M.A. 218, 24 C.M.R. 28 (1957); United States v. Hopf, 1 C.M.A. 584, 5 C.M.R. 12 (1952)). In Lee, this Court went further and broke down the prejudice prong into a two-part analysis: “(1) has the accused been misled to the extent that he has been unable adequately to prepare for trial; and (2) is the accused fully protected against another prosecution for the same offense.” Id.
In the present case, the variance is not material. The charged offense here is violating Article 81, UCMJ, on January 3, 1997, by conspiring to violate a general order by providing alcohol for consumption to a person enrolled in the delayed entry program. The military judge’s exceptions and substitutions did not substantially change the nature of the offense. The primary difference between the charged offense and the offense of which the military judge found Appellant guilty went to the acts taken in furtherance of that conspiracy — specifically, in the location of the consumption of the alcohol that was provided and the exact manner by which it was provided. This Court has held that “minor variances, such as the location of the offense or the date upon which an offense is allegedly committed, do not necessarily change the nature of the offense and in turn are not necessarily fatal.” Teffeau, 58 M.J. at 66. Compare United States v. Wray, 17 M.J. 375, 376 (C.M.A.1984) (holding that changing the date and amount of the larceny under the circumstances of that case changed the identity of the offense).
*122 In light of the ongoing socializing on the fatal day, any of a host of acts might have been cited as an act in furtherance of the agreement between Appellant and SSGT Teffeau to provide alcohol to these young women for their consumption. Although an overt act is an element of the offense of conspiracy, see Article 81, UCMJ; Manual for Courts-Martial, United States pt. IV, para. 5.b. (2005 ed.) (MCM), it is not the core of the offense. Rather, its purpose as an element is to demonstrate that the agreement to commit a crime — which is the inherent nature of the offense of conspiracy — is alive and in motion. See United States v. Collier, 14 M.J. 377, 380 (C.M.A.1983). Under the circumstances of this case, a variance between the pleadings and findings as to any or all of those acts did not substantially change the nature or seriousness of the offense or increase the punishment to which Appellant was subject.
Location usually is not a substantial part of the offense of conspiracy. To be found guilty of conspiracy, only two things need to be found: (1) the accused entered into an agreement with another to commit an offense, and (2) the accused acts to effect the object of the conspiracy. Article 81, UCMJ. In the present case, the object of the conspiracy was agreed to provide alcohol to a person admitted to the delayed entry program in violation of a general order. To find a material variance, the elements proven must be substantially different from those charged. See R.C.M. 918(a)(1).
Unlike Appellant’s assertion, there were not two criminal conspiracies in this case. Conspiracy is a continuing offense. MCM pt. IV, para. 5.e. Specifying JT’s house as the location of the alcohol consumption was not an essential part of the conspiracy. Substituting the lake as the location of the alcohol consumption likewise was unnecessary. All that needed to be charged was the fact that Appellant and SSgt Teffeau agreed to provide alcohol to a person enrolled in the delayed entry program in violation of a general order. Without the details of the specific location, Appellant is still guilty of the offense charged. The quantity and location of the alcohol consumption was at issue throughout this case, indicating that Appellant was on notice that both issues would be litigated. Therefore the variance between the offense charged and the offense of which the military judge found Appellant guilty was not material.
Under the circumstances of this case, the change in the description of the alleged acts taken in furtherance of that conspiracy did not prejudice Appellant — that is, it neither misled Appellant in preparing or presenting his defense, nor failed to protect him against a subsequent prosecution for the same misconduct. First, Appellant has not shown that he was unable to prepare adequately for trial. Significantly, Appellant did not object to the military judge’s findings at the time they were announced. In addition, the defense did not ask the military judge to make special findings as to the conspiracy offense.[5] See R.C.M. 918(b).[6] The conduct of the four participants that day was fully revealed by evidence presented by the Government and the defense and was subject to cross-examination and further amplification by the opposing party. The central nature of the offense was whether Appellant conspired with another to provide alcohol to delayed entry trainees. The location where Appellant was to accomplish the intended offense is not essential to the existence of a conspiracy. Indeed, there is no requirement that the offense, which is the object of the conspiracy, be committed. The offense was complete when Appellant or his coconspirator performed some overt act to bring about the object of the conspiracy.
Second, the facts were presented at trial on the conspiracy offense. The military judge found Appellant guilty of conspiracy based on those facts. Thus, Appellant ean *123 not be tried again for the same offense. See R.C.M. 907(b)(2)(C). Appellant has not explained on appeal how, if at all, this preparation or presentation of his defense was affected. In addition, Appellant has not established any prejudice by demonstrating that he was misled as to (1) what he had to defend against at trial, or (2) whether he could be tried again for the same offense or a similar one. The variance was not material. Even assuming there was an error, Appellant has failed to show prejudice stemming from that error. Therefore, we hold that there is no plain error in this case based on a claim of material variance.

Issue II

Facts specific to Issue II

When Appellant was interviewed by the military investigator, he unquestionably was represented by civilian counsel for the incident that forms the basis of the charges in this case. Appellant’s civilian counsel had been in contact with the civilian investigators regarding Appellant’s ease and instructed them that any contact with Appellant should be coordinated through him. On March 12, 1997, Appellant was interviewed by a military investigator, Captain (CPT) Montgomery.[7] Detective Shaw, a civilian investigator, told CPT Montgomery that Appellant had retained a “hot shot lawyer.” CPT Montgomery was on notice that Appellant had counsel. During the interview with CPT Montgomery, Appellant signed a waiver of his Article 31, UCMJ, 10 U.S.C. § 831 (2000), rights and subsequently made a number of statements that became the subject of a defense motion to suppress. The military judge denied the motion and admitted Appellant’s statements to CPT Montgomery at trial. Appellant now claims this was a violation of his rights to have counsel notified and given an opportunity to be present during the interview. This requirement was derived from United States v. McOmber, 1 M.J. 380 (C.M.A.1976).

Discussion

The legal question raised by Appellant in this case is whether the notice to counsel requirement under the McOmber rule is still valid. In McOmber, this Court ruled:
If the right to counsel is to retain any vitality, the focus in testing for prejudice must be readjusted where an investigator questions an accused known to be represented by counsel. We therefore hold that once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code.
1 M.J. at 383.
McOmber sought to fulfill the statutory purpose of Article 27, UCMJ, 10 U.S.C. § 827 (2000), regarding the right to counsel in a manner consistent with parallel developments in the Supreme Court’s constitutional analysis of the right to counsel (e.g., the constitutional “overtones” discussed in the McOmber opinion regarding the right to counsel in the context of interrogations). The McOmber rule, which was codified in the Military Rules of Evidence and titled “Notice to Counsel,” read:
When a person subject to the code who is required to give warnings under subdivision (c) intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect with respect to that offense, the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed.
Military Rule of Evidence (M.R.E.) 305(e) (1994). The analysis of the rules states explicitly, “Rule 305(e) is taken from United States v. McOmber.” Manual for Courts-Martial, United States, Analysis of the Mili *124 tary Rules of Evidence app. 22 at A22-15 (1994 ed.). Essentially, the McOmber rule and the old M.R.E. 305(e) required an investigator to notify an accused’s attorney that the accused is about to be interrogated and then to give the attorney a reasonable opportunity to be present at the interrogation.
In United States v. LeMasters, 39 M.J. 490, 492 (C.M.A.1994) this Court ruled that the notification requirement could be waived if the suspect or accused initiates the discussion with authorities and is made aware of his right to have his counsel notified and present.
Shortly after the decision in LeMasters, the Military Rules of Evidence were amended. The new (and current) version of M.R.E. 305(e)[8] was renamed “Presence of Counsel” and provides for two situations where counsel must be present, absent waiver: (1) custodial interrogations and (2) post-preferral interrogation. These changes were instituted to conform the Military Rules of Evidence to the Supreme Court’s decisions in Minnick v. Mississippi, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990),[9] and McNeil v. Wisconsin, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).[10] Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-15 through A22-16 (2005 ed.). Absent in the revised rule is the notice requirement originally created in McOmber:
Subdivision (e)(2) supersedes the prior notice to counsel rule. The prior rule, based on United States v. McOmber ... is not consistent with Minnick and McNeil____ Minnick and McNeil reexamine the Fifth and Sixth Amendment decisions central to the McOmber decision; the amendments to subdivision (e) are the result of that reexamination.
Id. at 16. We cannot rely solely on the President’s change to M.R.E. 305(e) to overrule McOmber. McOmber was a statutorily based decision and the underlying statute has not changed. A change in a rule cannot supplant a statute, including a statutorily based judicial decision. See United States v. Kossman, 38 M.J. 258, 260-61 (C.M.A.1993) (stating that the President cannot overrule or diminish an act of Congress or the Court of Appeals for the Armed Forces’ interpretation of the statute). However, McOmber represented an attempt to ensure that the statutory right to counsel under Article 27, UCMJ, was administered in a manner consistent with then-current Supreme Court constitutional precedent regarding the right to counsel. Minnick and McNeil subsequently modified that precedent. In the absence of a distinct military rationale justifying its continued application in light of these changes, McOmber is overruled. M.R.E. 305(e) remains controlling authority.
Applying M.R.E. 305(e) to the facts of this case, the military judge did not err in admitting Appellant’s pretrial statement to CPT Montgomery. Appellant was advised of his Article 31(b), UCMJ, rights and signed a valid, written waiver of his rights in accordance with M.R.E. 301(g). One of the rights Appellant acknowledged and waived, as indicated by his initials, reads, “I expressly do not desire to consult with either a civilian lawyer retained by me or a military lawyer *125 appointed as my counsel without cost to me prior to questioning.”
Appellant also acknowledged waiver of these rights when questioned by the military judge at trial regarding the written waiver.[11] Furthermore, Appellant acknowledged that his civilian attorney told him not to go into questioning without him and Appellant intentionally ignored that advice. Based on Appellant’s own testimony and actions in reviewing and signing the Article 31, UCMJ, rights form at the time of the interrogation, Appellant waived any right he may have had to have his counsel notified of and be present at the interrogation. See LeMasters, 39 M.J. at 493 (holding that notice to counsel may be waived).
The current version of M.R.E. 305(e) does not require an investigator to notify an accused’s or suspect’s counsel prior to initiating an interview, regardless of whether the investigator knows or reasonably should know that the accused or suspect is represented by counsel on the offenses about which the investigator intends to question him. The McOmber notification rule and the subsequent codification of the rule in the Military Rules of Evidence were not constitutionally required under the Fifth or Sixth Amendments of the Constitution and are not consistent with the law set forth in Minnick and McNeil.[12] Thus, there is no constitutional requirement to provide an accused with more rights than those set out in the rules. Accordingly, we hold that the military judge did not err in admitting Appellant’s statement to CPT Montgomery.

Issue III

Facts specific to Issue III

The court-martial was decided on July 21, 1998. The convening authority acted on August 6, 1999. The record was sent to the Navy-Marine Corps Court of Criminal Appeals (NMCCA) on January 28, 2000, and docketed on March 1, 2000. The defense filed twenty motions for enlargement between July 5, 2000, and May 31, 2002, when their brief was filed. The Government filed eight motions for enlargement; the last one was filed on March 26, 2003. The defense did not oppose any of the Government enlargements until April 2, 2003. The Government brief was filed with the court below on May 19, 2003. On November 18, 2004, the defense filed a motion for expedited review. Finally, on March 10, 2005, the NMCCA delivered its opinion.

Discussion

We review claims of post-trial and appellate delay using the four-factor analysis from Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). United States v. Moreno, 63 M.J. 129, 135 (C.A.A.F.2006).[13] If there has been a denial of due process, an appellant is entitled to relief unless the Court is convinced that the error was harmless beyond a reasonable doubt. United States v. Toohey, 63 M.J. 353, 363 (C.A.A.F.2006). Where we can determine that any violation of the due process right to speedy post-trial review and appeal is harmless beyond a reasonable doubt, we need not undertake the four-factor Barker analysis prior to disposing of that post-trial or appellate delay issue. See United States v. Allison, 63 M.J. 365, 370-71 (C.A.A.F.2006). In this case, we conclude that even if Appellant was denied his due process right to speedy review and appeal, that error was harmless beyond a reasonable doubt and no relief is warranted.
CONCLUSION
For the reasons stated above, we affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals.

. We heard oral argument in this case at The Catholic University of America, Columbus School of Law, Washington, D.C., as part of the Court’s ‘‘Project Outreach.” See United States v. Mahoney, 58 M.J. 346, 347 n. 1 (C.A.A.F.2003).

. JT testified that Appellant and SSgt Teffeau consumed bourbon mixed with Coke and JK consumed schnapps at JT’s residence. SSgt Teffeau testified that he did not consume any alcohoi at JT’s residence. The court below held that Appellant and SSgt Teffeau did consume the bourbon.

. Rule for Courts-Martial (R.C.M.) 905(e).

. Although I apply this Court’s plain error analysis in this case, I would employ the Supreme Court’s plain error analysis from Johnson v. United States, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). See United States v. Cary, 62 M.J. 277, 279 (C.A.A.F.2006) (Crawford, J., concurring in result); United States v. Kho, 54 M.J. 63, 65 (C.A.A.F.2000) (Crawford, C.J., concurring in result).

. Appellant also did not raise a variance issue regarding the military judge’s findings in his post-trial submission to the convening authority.

. R.C.M. 918(b) provides that any party may request special findings as "to matters of fact reasonably in issue as to an offense and need be made only as to offenses of which the accused was found guilty.”

. This was the second of three meetings between Appellant and military investigators. The first meeting occurred on March, 5 1997 with Major Bettendorf. The final meeting, also with CPT Montgomery, occurred on March 24, 1997. The final meeting was terminated once Appellant unequivocally requested counsel.

. M.R.E. 305(e) states:
Presence of counsel. (1) Custodial interrogation. Absent a valid waiver of counsel under subdivision (g)(2)(B), when an accused or person suspected of an offense is subjected to custodial interrogation under circumstances described under subdivision (d)(1)(A) of this rule, and the accused or suspect requests counsel, counsel must be present before any subsequent custodial interrogation may proceed.
(2) Post-preferral interrogation. Absent a valid waiver of counsel under subdivision (g)(2)(C), when an accused or person suspected of an offense is subjected to interrogation under circumstances described in subdivision (d)(1)(B) of this rule, and the accused or suspect either requests counsel or has an appointed or retained counsel, counsel must be present before any subsequent interrogation concerning that offense may proceed.

. The Court in Minnick held that once a suspect has requested counsel, interrogators may not reinitiate questioning unless the attorney is present, regardless of whether or not there has been an outside consultation. 498 U.S. at 153, 111 S.Ct. 486.

. The Court in McNeil states that the Sixth Amendment right to counsel applies "at the first formal proceeding against an accused.” 501 U.S. at 181, 111 S.Ct. 2204.

. MJ: And it says here you don’t desire to talk to the civilian lawyer, and you had a civilian lawyer, Mr. Moses, right?
App: Yes, sir.
MJ: Or a military lawyer?
App: Yes, sir.
MJ: As you were going over this form with him in that room that he described, did you say, "Get me a military lawyer”?
App: No, sir, I didn’t.

. The new M.R.E. 305(e) does not address the ethical implications of dealing with accuseds or suspects who are represented by counsel. See generally M.R.E. 305(e).

. I apply the analysis from the majority opinion in Moreno, but see Moreno, 63 M.J. at 144-52 (C.A.A.F.2006) (Crawford, J., concurring in part and dissenting in part).