UNITED STATES, Appellee

v.

Michael L. TREAT, Sergeant
U.S. Army, Appellant

No. 14-0280

Crim. App. No. 20110402

United States Court of Appeals for the Armed Forces

Argued May 13, 2014

Decided July 16, 2014

OHLSON, J., delivered the opinion of the Court, in which
ERDMANN, J., joined. BAKER, C.J., filed a separate opinion
concurring in the result. STUCKY and RYAN, JJ., each filed
separate dissenting opinions.

Counsel

For Appellant: Major Jacob D. Bashore (argued); Colonel Kevin
Boyle and Lieutenant Colonel Peter Kageleiry Jr. (on brief);
Captain Aaron Inkenbrandt.

For Appellee: Captain Daniel H. Karna (argued); Colonel John P.
Carrell, Lieutenant Colonel James L. Varley, and Major Robert A.
Rodrigues (on brief).

Military Judges: Jeffery R. Nance and Wendy Daknis

**This opinion is subject to revision before final publication.**

Judge Ohlson delivered the opinion of the Court.

We granted review in this case to determine whether the military judge created a fatal variance and violated Appellant's due process rights when she made exceptions and substitutions to a charge and specification and found Appellant guilty of the revised charge and specification contrary to his plea. We hold that the changes made to the charge and specification constituted a material variance but did not prejudice Appellant. We therefore affirm Appellant's conviction.

During the relevant time period, Appellant was a Sergeant (E-5) assigned to the 54th Engineering Battalion in Bamberg, Germany. In September 2010, Appellant received orders notifying him that he was being deployed with his unit to Afghanistan in mid-November. However, when the unit deployment occurred, Appellant was not present. He later reported he had been kidnapped by Russian-speaking men during the time of the deployment, preventing him from being present. Appellant was subsequently charged with desertion, missing movement, willfully disobeying a superior commissioned officer, and making a false official statement in violation of Articles 85, 87, 90, and 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 885, 887, 890, 907 (2006). Appellant pleaded not guilty to the charges and elected a judge-alone trial.

2

The missing movement charge, in violation of Article 87, UCMJ, initially stated as follows:

> In that Sergeant Michael L. Treat, U.S. Army, did, at or near Bamberg, Germany, on or about 17 November 2010, through design, miss the movement of Flight TA4B702 with which he was required in the course of duty to move.

However, at trial the Government's witnesses could not recall the flight number of the aircraft on which Appellant's unit deployed. After hearing all the evidence, the military judge convicted Appellant of the missing movement charge, but only after excepting the words "Flight TA4B702," and substituting therefor the words "the flight dedicated to transport Main Body 1 of 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgyzstan."

The military judge also convicted Appellant of making a false official statement in violation of Article 107, UCMJ, acquitted him of the remaining charges, and sentenced him to a bad-conduct discharge, confinement for three months, and reduction to the grade of E-1. The convening authority approved the findings and sentence as adjudged. Upon review the United States Army Court of Criminal Appeals affirmed, finding that the exceptions and substitutions were neither material nor prejudicial. United States v. Treat, 72 M.J. 845, 849 (A. Ct. Crim. App. 2013). On Appellant's petition we granted review of the following issue:

United States v. Treat, No. 14-0280/AR

> WHETHER THERE IS A FATAL VARIANCE AND A VIOLATION OF
> APPELLANT'S DUE PROCESS RIGHT TO NOTICE WHEN THE
> GOVERNMENT ALLEGED THAT APPELLANT MISSED THE MOVEMENT
> OF A PARTICULAR AIRCRAFT BUT THE PROOF ESTABLISHED
> THAT HE MISSED THE MOVEMENT OF A PARTICULAR UNIT.

United States v. Treat, 73 M.J. 241-42 (C.A.A.F. 2014) (order granting review).  We affirm Appellant's conviction for the reasons stated below.

## BACKGROUND

Appellant was a combat engineer assigned to the 54th Engineer Battalion, 370th Sapper Company, which was stationed in Bamberg, Germany.  In September 2010, Appellant was ordered to deploy to Afghanistan with his unit on or about November 19, 2010.  Appellant's orders did not include instructions to move on a particular flight.

Approximately six weeks before the scheduled departure, Appellant was informed that he would deploy with Main Body 1 of the 54th Engineer Battalion on or about November 17, 2010.  He was also informed that the unit's actual departure could be moved forward or backward by forty-eight hours or more.  Ultimately, on November 19, 2010, Appellant's unit boarded an aircraft at Ramstein Air Base that was bound for Manas Air Base, Kyrgyzstan.  Appellant was required to be on that flight, but he was not present at company formation and did not get on the plane.

When Appellant returned to post the next day, he was immediately stopped by the military police.  Appellant later told investigators that he had been abducted at a German bar by Russian-speaking men on November 15, 2010, held for five days in an unknown location and for unknown reasons, and then suddenly released on November 20, 2010, which was after his unit had deployed.  Appellant was subsequently charged with desertion, missing movement by design, willfully disobeying a superior commissioned officer, and making a false official statement.

At the military judge-alone trial, the Government's theory of the case was that several days prior to his unit's departure, Appellant intentionally left post, holed up at a local inn, and waited until he was confident that his unit had left Germany. The Government asserted that Appellant's purported kidnapping was an elaborate story that Appellant invented in order to avoid the deployment and to avoid being disciplined for his absence.

In support of its case, the Government put First Sergeant Barker of the 370th Sapper Company on the stand.  Barker testified that he first became aware Appellant was missing on the morning of November 17, when Appellant did not show up for accountability formation.  Barker stated that Appellant remained missing and was not with the 370th on November 19.  Barker testified that just before the company boarded the bus from Bamberg to Ramstein Air Base, he used the flight manifest to

call the roll. Barker noted that the flight number was printed on the left-hand side of the manifest, which listed each soldier assigned to the flight by rank, name, and Social Security number. Barker explained that he could not remember the specific flight number, but after looking at the manifest shown to him by the trial counsel, he testified that the 370th, including Appellant, was assigned to fly on flight TA4B702.

On cross-examination trial defense counsel questioned Barker's recollection of the flight number. Defense counsel asked Barker: "[Y]ou don't remember the flight number other than . . . looking at the document, right?" Barker answered: "No, ma'am." On redirect, trial counsel tried to ask whether Barker had any reason to believe that the actual flight number was not the number printed on the manifest he had consulted, but the defense objected. The military judge then asked Barker: "[D]o you have any way of knowing what the [flight] number was compared to what you just looked at [on the flight manifest]?" Barker responded: "No, ma'am." The military judge sustained the defense's objection and Barker was excused.

Next, the Government called Appellant's company commander, Captain Looney, to testify. Trial counsel asked Looney whether he had traveled to Afghanistan on the same flight with his company, and Looney stated that he did. Then there was the

following exchange between trial counsel, Looney, and the military judge:

> [TC]: Do you remember what the flight number of that plane was?
>
> [WIT]: I do not recall off the top of my head.
>
> [TC]: Is there anything that might jog your memory?
>
> [WIT]: Like the manifest roster would be something that would have it.
>
> TC: Ma'am, may I approach?
>
> MJ: You may. Captain Looney, did you . . . at any point know the flight number without referring to a document?
>
> WIT: No, Ma'am.
>
> MJ: Okay. Then it doesn't appear as though approaching this witness is going to help refresh his memory because he doesn't have any independent knowledge of the flight number.

Trial counsel continued to question Looney in an attempt to show that he knew the flight number at some point in the past but could no longer remember it without help. The defense objected to trial counsel's second attempt to refresh Looney's recollection with a copy of the flight manifest. The military judge sustained the objection, and trial counsel moved on to other topics.

In addition to First Sergeant Barker and Captain Looney, the Government also put Appellant's battalion commander and squad leader on the stand. Neither of them testified about the

7

specific flight number of the aircraft on which Main Body 1 of the 54th Engineer Battalion deployed.

The Government also presented a soldier who testified that Appellant said that he did not deploy with his unit because he felt like his squad leader, his platoon sergeant, and First Sergeant Barker "were out to get him." The Government's final witness was a soldier who testified that Appellant had told him that the alleged kidnapping by Russians "didn't happen," and that during the time of the deployment Appellant "just hid out for a few days." At the close of the Government's case, defense counsel did not move pursuant to Rule for Courts-Martial (R.C.M.) 917 for a finding of not guilty.

The defense's theme throughout the trial was "the truth is stranger than fiction." On cross-examination of the Government's witnesses, trial defense counsel elicited testimony that Appellant transferred into the 370th knowing that the company was about to deploy, that Appellant did not attempt to get out of the deployment during the pre-deployment training, that Appellant had previously deployed to Iraq, and that Appellant was packed and ready to leave for Afghanistan.

During the defense case, trial defense counsel called three witnesses. The first, Appellant's former platoon sergeant, testified that Appellant knew he would be deploying when he transferred into the 54th Engineering Battalion. The second

8

witness, who also was a sergeant, testified to an incident in which he was grabbed outside a Bamberg bar, put into the back of a car, robbed, and left several miles away approximately five hours later. The third witness, a detective with the Bamberg police department, testified that he investigated Appellant's alleged kidnapping and found a piece of rope and footprints that were a possible match for Appellant's shoes outside of an inn nearby that matched Appellant's description of the location where he had been released. Appellant did not testify.

After brief deliberations the military judge announced her findings. She found Appellant guilty of making a false official statement, and not guilty of the charges of desertion and willfully disobeying a superior commissioned officer. In regard to the missing movement offense, Charge II and its Specification initially read:

> In that Sergeant Michael L. Treat, U.S. Army, did, at or near Bamberg, Germany, on or about 17 November 2010, through design, miss the movement of Flight TA4B702 with which he was required in the course of duty to move.

The military judge announced her findings on this charge and specification as follows:

> Guilty, except the words and figures, "Flight TA4B702," substituting therefor, "the flight dedicated to . . . transport Main Body 1 of 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgyzstan." Of the excepted words and figures, Not Guilty. Of the substituted words and figures, Guilty.

APPELLANT'S ARGUMENT ON APPEAL

Appellant argues that "[t]he military judge's findings caused a material variance because she convicted [him] of an offense not charged after he successfully defended himself on the charged offense." Brief for Appellant at 3, United States v. Treat, No. 14-0280/AR (C.A.A.F. Mar. 25, 2014). Appellant further argues that he "thus suffered prejudice because the military judge substantially changed the nature of the offense and denied him the right to prepare and defend against the specification as convicted." Id. Accordingly, Appellant concludes that the military judge's findings by exceptions and substitutions constituted a fatal variance, and that this Court must therefore set aside and dismiss the missing movement charge and specification, set aside the sentence, and order a sentence rehearing.

STANDARD OF REVIEW

Whether there was a fatal variance is a question of law reviewed de novo. United States v. Salazar, 44 M.J. 464, 471 (C.A.A.F. 1996) ("Questions of law are reviewed de novo."); United States v. Ivory, 9 C.M.A. 516, 522, 26 C.M.R. 296, 302 (1958) (Quinn, C.J., concurring in the result) ("[W]hether there was a fatal variance . . . . was a legal question to be decided by the law officer."); United States v. Useche, 70 M.J. 657, 661 (N-M. Ct. Crim. App. 2012) ("Whether an amended specification

materially deviates from a charged specification is a question of law we review de novo.").

When defense counsel fails to object at trial, we review a military judge's findings by exceptions and substitutions for plain error. United States v. Finch, 64 M.J. 118, 121 (C.A.A.F. 2006).

DISCUSSION

Rule for Courts-Martial (R.C.M.) 918(a)(i) explicitly authorizes a court-martial to make findings by exceptions and substitutions. However, at times this authority lies in tension with an accused's constitutional right "to receive fair notice of what he is being charged with." United States v. Girouard, 70 M.J. 5, 10 (C.A.A.F. 2011); see also Schmuck v. United States, 489 U.S. 705, 717 (1989) ("It is ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him.").

In the instant case, Appellant acknowledges that the court-martial had the authority to make findings by exceptions and substitutions, but also avers that the resulting differences between the initial charge sheet and the military judge's findings constituted a fatal variance because he was not provided fair notice of the crime he ultimately was convicted of

11

committing.[1]  However, it is well established that in order "to prevail on a fatal variance claim, an appellant must show <u>both</u> that the variance was material <u>and</u> that he was substantially prejudiced thereby."  <u>United States v. Marshall</u>, 67 M.J. 418, 420 (C.A.A.F. 2009) (emphasis added).

It is both clear and uncontested that a variance occurred in the instant case.  Therefore, the first question this Court must answer is whether the exceptions and substitutions made by the military judge constituted a "material" variance.  The test for whether a variance is material is whether it "substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment of the offense."  <u>Marshall</u>, 67 M.J. at 420 (citation and internal quotation marks omitted).  Appellant does not argue, and there is no basis to conclude, that the military judge's exceptions and substitutions increased the seriousness of the offense or increased the punishment of the offense.  Rather, Appellant solely argues that the military judge's exceptions and substitutions substantially changed the nature of the offense.

---

[1] We do not find that, pursuant to the provisions of R.C.M. 905(e), waiver applies here.  First, during his closing argument on the merits, Appellant challenged the Government's theory of the case regarding the flight number.  Second, the Army Court of Criminal Appeals held that Appellant did not waive this issue at trial, and the Government did not appeal this adverse decision to this Court.

It is a close question as to whether the military judge's exceptions and substitutions did, indeed, substantially change the nature of the offense. The offense charged continued to be a violation of Article 87, UCMJ, and Appellant knew from the outset of the court-martial proceedings that regardless of how the specific flight was characterized or described, the gravamen of the offense with which he was charged was that he failed to be present on the aircraft with his unit when it deployed from Germany to Afghanistan.

On the other hand, we note that "[i]f a person . . . is ordered to move as a passenger aboard a particular ship or aircraft, . . . then missing the particular sailing or flight is essential to establishing the offense of missing movement." See Manual for Courts-Martial, United States pt. IV, para. 11.c.(2)(b); cf. United States v. Kapple, 40 M.J. 472, 473–74 (C.A.A.F. 1994) (requiring the government to prove that the accused had been ordered to move aboard a specific aircraft). In the original charging document in the instant case, the Government chose to describe the specific aircraft as Flight TA4B702, and thus that specific flight number became an integral part of an element of the offense. Under these circumstances, we decline to hold that only a minor variance occurred.

Although we find that a material variance occurred, that is not the end of our inquiry. Consistent with our long-standing

13

precedent, we must next turn our attention to the question of whether the material variance in the instant case prejudiced Appellant. Indeed, as we stated in Finch, this Court has "placed an increased emphasis on the prejudice prong" of the fatal variance analysis. 64 M.J. at 121.

"A variance can prejudice an appellant by (1) putting 'him at risk of another prosecution for the same conduct,' (2) misleading him 'to the extent that he has been unable adequately to prepare for trial,' or (3) denying him 'the opportunity to defend against the charge.'" Marshall, 67 M.J. at 420 (quoting United States v. Teffeau, 58 M.J. 62, 67 (C.A.A.F. 2003)). Appellant argues that the last minute changes made by the military judge denied him the opportunity to adequately prepare his defense and defend against the missing movement charge.

This Court looks closely at the specifics of the defense's trial strategy when determining whether a material variance denied an accused the opportunity to defend against a charge. In so doing, we consider how the defense channeled its efforts and what defense counsel focused on or highlighted. Marshall, 67 M.J. at 421; Teffeau, 58 M.J. at 67; United States v. Lovett, 59 M.J. 230, 236 (C.A.A.F. 2004).

In the instant case, Appellant's defense was squarely focused on the assertion that he was prevented from moving with the 370th Sapper Company because he was kidnapped. Trial

14

defense counsel did not claim in any manner that Appellant was not present on the date of his unit's movement because he was unaware of the specific aircraft he was supposed to be on or the unit he was supposed to move with.  Rather, right from the beginning of the case, Appellant channeled his efforts into convincing first the investigators and then the court-martial that, as stated by defense counsel in her opening statement, Appellant "did not intend to miss the movement, but he was prevented from going with his unit . . . because of what had happened to him."

While trial defense counsel did mention the lack of evidence of the flight number in her closing argument, she did not channel her efforts into disproving the Flight TA4B702 element.  Furthermore, despite citing the lack of proof that it was specifically Flight TA4B702 that Appellant missed, trial defense counsel did not move pursuant to R.C.M. 917 for a finding of not guilty on that particular charge.

Importantly, the defense has not identified for this Court any different trial strategy it might have employed if Appellant originally had been charged with "missing the flight dedicated to transport Main Body 1 of 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgyzstan."  All indications are that Appellant's defense of impossibility due to kidnapping would have remained precisely the same whether or not

15

he was charged per the original specification or per the exceptions and substitutions, and we see no reasonable possibility that the verdict in this case would have been any different. Accordingly, we find Appellant was not denied the opportunity to defend against the charge on which he was convicted. We therefore hold that the variance created by the military judge, although material, did not prejudice Appellant and thus was not fatal.[2]

## DECISION

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

[2] When counsel fails to object at trial, we review a military judge's findings by exceptions and substitutions for plain error. Finch, 64 M.J. at 121. Under plain error review, Appellant has the burden of demonstrating that: (1) there was error, (2) the error was plain or obvious, and (3) the error materially prejudiced a substantial right of the accused. Id. Regardless of whether the error in the instant case was "plain or obvious," Appellant cannot prevail because he has not successfully established the third prong -- material prejudice to a substantial right.

United States v. Treat, No. 14-0280/AR

    BAKER, Chief Judge (concurring in the result):

    I concur in the result for the following reasons.  A
variance between pleadings and proof exists when evidence at
court-martial "establishes the commission of a criminal offense
by the accused, but the proof does not conform strictly with the
offense alleged in the charge."  United States v. Teffeau, 58
M.J. 62, 66 (C.A.A.F. 2003) (citation and internal quotation
marks omitted).  A variance is material if it "substantially
change[s] the nature of the offense or . . . increase[s] the
seriousness of the offense or the maximum punishment for it."
Id.  A variance is prejudicial if it places an appellant "at
risk of another prosecution for the same conduct" or if it
prevented him from "adequately . . . prepar[ing] for" court-
martial or "denied [him] the opportunity to defend against the
charge."  Id. at 67 (citations omitted).  Thus, a variance that
is both material and prejudicial is deemed to be "fatal," a
rather grim and dramatic way to describe reversible error.
United States v. Marshall, 67 M.J. 418, 420 (C.A.A.F. 2009)
(citations omitted).  In short, the purpose of variance analysis
is to distinguish between those exceptions and substitutions
that merely clarify and correct and those that change the nature
of the offense, or the terms of exposure, and thus conflict with
due process principles.

A variance occurred in this case when the military judge excepted "Flight TA4B702" and substituted "the flight dedicated to transport Main Body 1 of 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgyzstan." Thus, the specification for which Appellant was ultimately convicted read:

> In that Sergeant Michael L. Treat, U.S. Army, did, at or near Bamberg, Germany, on or about 17 November 2010, through design, miss the movement of the flight dedicated to transport Main Body 1 of 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgyzstan[,] with which he was required in the course of duty to move.

However, this variance was not material because the offense remained the same before and after the military judge's exception and substitution. Appellant was charged with missing movement by missing the <u>flight</u> deploying his unit. The government can charge this offense in a general way, by mode of transport, or in a more specific way, by reference to the movement of a particular unit. How the government charges the offense may depend on whether a unit moved en masse or an individual was ordered to join a unit already deployed. Yet while the government has flexibility in how it charges an Article 87, UCMJ, 10 U.S.C. § 887, offense, it must live with the result; it cannot charge the missing of a flight and then convict an accused for the missing of a unit movement (as

opposed to the flight carrying the unit) or the missing of a ship.

Contrary to Appellant's argument, the exception and substitution in this case did not change the offense from the missing of a flight to the missing of a unit. Appellant was originally charged with missing his flight to Manas Air Base, which was carrying his unit, and he was convicted of missing his flight to Manas Air Base, which was carrying his unit. The military judge's exception and substitution did no more than accurately describe the flight that Appellant was always charged with missing. The change was akin to correcting the name of the victim on a larceny charge or, by further illustration, to saying, "I missed my flight to Dallas," rather than "I missed Mohawk Airways Flight 12345, which was en route to Dallas." The specification also used the language "on or about," thus making it clear from the outset that it was the missing of a flight and not the particular aircraft used for that flight that formed the gravamen of the offense. As a result, Appellant was on notice regarding the nature of the offense before and after the military judge's exception and substitution.

In addition, none of the purposes behind material variance doctrine were offended. Appellant is not at risk of another prosecution for the same conduct. He was not misled as to the nature of the offense or unable to prepare adequately for court-

3

martial.  Nor was he denied the opportunity to defend against the charge.  <u>Marshall</u>, 67 M.J. at 420.  In short, the military judge's substitution did not change the nature of the offense, substantially or at all.

STUCKY, Judge (dissenting):

The military judge convicted Appellant by exceptions and substitutions to the specification alleged in the charge sheet. Appellant did not object to that finding until after the court-martial was adjourned, when he submitted matters to the convening authority under Rule for Court-Martial (R.C.M.) 1105. Appellant's failure to raise the issue before the court adjourned constitutes waiver. R.C.M. 905(e). If Appellant did not waive his ability to raise the issue on appeal, then the finding by exceptions and substitutions was a fatal variance (both material and prejudicial). Therefore, I respectfully dissent.

## I. Waiver

Citing United States v. Finch, 64 M.J. 118, 121 (C.A.A.F. 2006), the majority asserts that: "[W]e review a military judge's findings by exceptions and substitutions for plain error." United States v. Treat, __ M.J. __ (11) (C.A.A.F. 2014). I disagree.

Finch cites R.C.M. 905(e) as the basis for this plain error standard but does not examine the language of the rule. R.C.M. 905(e) provides:

> Failure by a party to raise defenses or objections or to make motions or requests which must be made before pleas are entered under subsection (b) of this rule shall constitute waiver. The military judge for good cause shown may grant relief from the waiver. Other

> motions, requests, defenses, or objections, except
> lack of jurisdiction or failure of a charge to allege
> an offense, must be raised before the court-martial is
> adjourned for that case and, unless otherwise provided
> in this Manual, failure to do so shall constitute
> waiver.

It does not say "forfeit," "forfeit absent plain error," or "waive absent plain error." It says "shall constitute waiver." Therefore, as Appellant failed to object before the court-martial was adjourned, we should consider the variance issue waived.

The majority cites two grounds for concluding that the issue should not be considered waived: (1) Appellant challenged the Government's theory of the case concerning the flight number during his closing argument; and (2) the Government did not appeal the United States Army Court of Criminal Appeals' adverse ruling on this issue to this Court. Treat, __ M.J. at __ n.1 (12 n.1). But Appellant made no R.C.M. 917 motion for a finding of not guilty,[1] and his findings argument alone, in which he challenged the sufficiency of the Government's evidence that he missed flight TA4B702, is not an objection to the military judge's finding by exceptions and substitutions. And whether

---

[1] Nor did the military judge raise the issue of her own accord. I recognize that the defense counsel may have intentionally not made an R.C.M. 917 motion, fearing that the military judge would have permitted the trial counsel to reopen the case. R.C.M. 917(b) Discussion. Nevertheless, choices have consequences. See United States v. Marshall, 67 M.J. 418, 420 (C.A.A.F. 2009) (concluding an R.C.M. 917 motion was sufficient to preserve the issue of a fatal variance for appeal).

2

the Government failed to raise the issue of waiver on this particular issue is irrelevant. R.C.M. 905(e) clearly states that an accused's failure to raise the issue before the court-martial is adjourned constitutes waiver, unless the objection is covered by some other rule. In this case, Appellant failed to object, and the objection is not covered by another rule. Appellant's failure constitutes waiver, and we should not consider this assignment of error.

## II. Plain Error

If, as the majority holds, we must review the finding by exceptions and substitutions for plain error, Appellant has established that the material variance was obvious error that prejudiced his substantial rights: (1) he may have been convicted of missing the very flight the military judge acquitted him of missing; and (2) he was denied adequate notice and the opportunity to defend.

Appellant was charged with missing the movement of a specific flight, flight TA4B702. The defense counsel initiated a three-pronged attack against the Government's case. First, she established that all elements of Appellant's unit did not deploy together, suggesting that Appellant may not have been required to deploy with Main Body 1. Second, with the assistance of the trial counsel and the military judge, the defense counsel successfully frustrated the Government's

attempts to prove the number of the flight that Appellant was charged with missing and to enter the flight manifest into evidence. And third, she highlighted the Government's failure to disprove the inability defense Appellant had raised in the sworn statement he provided to a military policeman and which the Government introduced into evidence: that he missed the movement because he had been kidnapped.

The defense counsel made the failure of the Government to prove the flight number one of the foci of her closing argument:

> Well, the government has charged that Sergeant Treat missed a flight on that date. A flight that, according to all sources, never existed. It did not take off. There was no movement to miss on the 17th of November, ma'am, because that flight didn't go anywhere. And what happened on the 17th according to Sergeant Mathis? He called Sergeant Treat and said, "We're not leaving today. Stand down."
>
> There is simply no evidence with which to convict Sergeant Treat of missing a movement under Article 87 since that movement didn't exist. We don't even know the flight number for sure. There has been no credible evidence before this court as to what the actual the [sic] flight number was on the 17th of November. None of the witnesses knew the flight number. We don't even know if the flight number would have stayed the same or changed when they actually flew on 19 November.

The military judge thereafter convicted Appellant by exceptions and substitutions of missing "the movement of the flight dedicated to transport Main Body 1 of the 54th Engineer Battalion."

The majority holds that the military judge's finding was a material variance. I agree. The military judge's finding substantially changed the nature of the offense. See Marshall, 67 M.J. at 420—21 (changing the name of the individual from whose custody the appellant allegedly escaped was a material variance) (citing Finch, 64 M.J. at 121). But I cannot agree with the majority's conclusion that Appellant was not prejudiced. Treat, __ M.J. at __ (16).

In United States v. Nedeau, the appellant was charged in one specification with larceny of various specific food items -- seven pounds of ground beef, ten pounds of canned ham, five pounds of cheese, etc. 7 C.M.A. 718, 719, 23 C.M.R. 182, 183 (1957). The court members convicted him by exceptions and substitutions of larceny of "foodstuffs." Id., 23 C.M.R. at 183. The Court of Military Appeals held that the finding of the court-martial changed the nature and identity of the offense charged. Id. at 720, 23 C.M.R. at 184. As a finding by exception "constitutes a finding that the accused is not guilty of what is alleged in the excepted language," it appears that Staff Sergeant Nedeau must have been convicted of larceny of food items other than those alleged in the specification. Id., 23 C.M.R. at 184. This was a fatal variance. Id. at 721, 23 C.M.R. 185.

United States v. Treat, No. 14-0280/AR

Sergeant Treat is in a somewhat similar situation.  By excepting the flight number, the military judge acquitted him of missing the movement of flight TA4B702 but convicted him of more general language -- "missing the movement of the flight dedicated to transport Main Body 1 of the 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgyzstan."  I see two related problems resulting from this finding:

(1) Flight TA4B702 is necessarily a subset of the universe of flights that could have transported Main Body 1.  By substituting for the excepted language the more general language, Appellant may have been convicted of missing the movement of TA4B702, the same flight he was acquitted of missing.  That would amount to a Double Jeopardy Clause violation.  See United States v. Stewart, 71 M.J. 38, 43 (C.A.A.F. 2012) (finding accused guilty of aggravated sexual assault for engaging in a sexual act with a person who was substantially incapable of declining participation in the sexual act, after acquitting him of aggravated sexual assault for engaging in a sexual act with a person who was substantially incapacitated violated the Double Jeopardy Clause).

(2) If Appellant was convicted of missing the movement of some flight other than TA4B702, then he was not given notice and an opportunity to defend against it.  By broadening the offense

6

from missing flight TA4B702 to missing whatever flight was scheduled to transport Main Body 1, the military judge made Appellant's defense -- that the Government failed to establish that he missed flight TA4B702 -- irrelevant.

Therefore, if Appellant did not waive the issue, I would hold that the material variance in this case was fatal, and would reverse.

<u>United States v. Treat</u>, No. 14-0280/AR

RYAN, Judge (dissenting):

I join Judge Stucky's dissent, with a single caveat. While I agree with Judge Stucky's analysis as to why the majority is wrong that there is no waiver, <u>United States v. Treat</u>, 73 M.J. __, __ (1-3) (C.A.A.F. 2014) (Stucky, J., dissenting), I am nonetheless skeptical that we should find waiver where, as here, the military judge clearly determined that the Government did not prove one of the elements -- which is why she excepted the language that pled it. <u>See</u> Rule for Courts-Martial (R.C.M.) 917(a) ("The military judge . . . <u>sua</u> <u>sponte</u>, shall enter a finding of not guilty of one or more offenses charged after the evidence on either side is closed and before findings on the general issue of guilt are announced if the evidence is insufficient to sustain a conviction of the offense affected."). Thus, irrespective of Appellant's duty to object at trial, <u>see</u> <u>United States v. Finch</u>, 64 M.J. 118, 121 (C.A.A.F. 2006), in my view the military judge had an independent duty to dismiss the charge, including giving the parties an opportunity to be heard, and the military judge failed to fulfill that duty. <u>See</u> R.C.M. 917(a), (c). Absent waiver, I fully agree that there was prejudice to a substantial right of the accused, <u>see</u> Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a) (2012), and would reverse the decision of the United States Army Court of Criminal Appeals.