Judge OHLSON
delivered the opinion of the Court.
We granted review in this case to determine whether the military judge created a fatal variance and violated Appellant’s due process rights when she made exceptions and substitutions to a charge and specification and found Appellant guilty of the revised charge and specification contrary to his plea. We hold that the changes made to the charge and specification constituted a material variance but did not prejudice Appellant. We therefore affirm Appellant’s conviction.
During the relevant time period, Appellant was a Sergeant (E-5) assigned to the 54th Engineering Battalion in Bamberg, Germany: In September 2010, Appellant received orders notifying him that he was being deployed with his unit to Afghanistan in mid-November. However, when the unit deployment occurred, Appellant was not present. He later reported he had been kidnapped by Russian-speaking men during the time of the deployment, preventing him from being present. Appellant was subsequently charged with desertion, missing movement, willfully disobeying a superior commissioned officer, and making a false official statement in violation of Articles 85, 87, 90, and 107, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 885, 887, 890, 907 (2006). Appellant pleaded not guilty to the charges and elected a judge-alone trial.
The missing movement charge, in violation of Article 87, UCMJ, initially stated as follows:
In that Sergeant Michael L. Treat, U.S. Army, did, at or near Bamberg, Germany, on or about 17 November 2010, through design, miss the movement of Flight TA4B702 with which he was required in the course of duty to move.
However, at trial the Government’s witnesses could not recall the flight number of the aircraft on which Appellant’s unit deployed. After hearing all the evidence, the military judge convicted Appellant of the missing movement charge, but only after excepting the words “Flight TA4B702,” and substituting therefor the words “the flight dedicated *333 to transport Main Body 1 of 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgyzstan.”
The military judge also convicted Appellant of making a false official statement in violation of Article 107, UCMJ, acquitted him of the remaining charges, and sentenced him to a bad-conduct discharge, confinement for three months, and reduction to the grade of E-l. The convening authority approved the findings and sentence as adjudged. Upon review the United States Army Court of Criminal Appeals affirmed, finding that the exceptions and substitutions were neither material nor prejudicial. United States v. Treat, 72 M.J. 845, 849 (A.Ct.Crim.App.2013). On Appellant’s petition we granted review of the following issue:
WHETHER THERE IS A FATAL VARIANCE AND A VIOLATION OF APPELLANT’S DUE PROCESS RIGHT TO NOTICE WHEN THE GOVERNMENT ALLEGED THAT APPELLANT MISSED THE MOVEMENT OF A PARTICULAR AIRCRAFT BUT THE PROOF ESTABLISHED THAT HE MISSED THE MOVEMENT OF A PARTICULAR UNIT.
United States v. Treat, 73 M.J. 241, 241-42 (C.A.A.F.2014) (order granting review). We affirm Appellant’s conviction for the reasons stated below.
BACKGROUND
Appellant was a combat engineer assigned to the 54th Engineer Battalion, 370th Sapper Company, which was stationed in Bamberg, Germany. In September 2010, Appellant was ordered to deploy to Afghanistan with his unit on or about November 19, 2010. Appellant’s orders did riot include instructions to move on a particular flight.
Approximately six weeks before the scheduled departure, Appellant was informed that he would deploy with Main Body 1 of the 54th Engineer Battalion on or about November 17, 2010. He was also informed that the unit’s actual departure could be moved forward or backward by forty-eight hours or more. Ultimately, on November 19, 2010, Appellant’s unit boarded an aircraft at Ram-stein Air Base that was bound for Manas Air Base, Kyrgyzstan. Appellant was required to be on that flight, but he was not present at company formation and did not get on the plane.
When Appellant returned to post the next day, he was immediately stopped by the military police. Appellant later told investigators that he had been abducted at a German bar by Russian-speaking men on November 15, 2010, held for five days in an unknown location and for unknown reasons, and then suddenly released on November 20, 2010, which was after his unit had deployed. Appellant was subsequently charged with desertion, missing movement by design, willfully disobeying a superior commissioned officer, and making a false official statement.
At the military judge-alone trial, the Government’s theory of the case was that several days prior to his unit’s departure, Appellant intentionally left post, holed up at a local inn, and waited until he was confident that his unit had left Germany. The Government asserted that Appellant’s purported kidnapping was an elaborate story that Appellant invented in order to avoid the deployment and to avoid being disciplined for his absence.
In support of its case, the Government put First Sergeant Barker of the 370th Sapper Company on the stand. Barker testified that he first became aware Appellant was missing on the morning of November 17, when Appellant did not show up for accountability formation. Barker stated that Appellant remained missing and was not with the 370th on November 19. Barker testified that just before the company boarded the bus from Bamberg to Ramstein Air Base, he used the flight manifest to call the roll. Barker noted that the flight number was printed on the left-hand side of the manifest, which listed each soldier assigned to the flight by rank, name, and Social Security number. Barker explained that he could not remember the specific flight number, but after looking at the manifest shown to him by the trial counsel, he testified that the 370th, including Appellant, was assigned to fly on flight TA4B702.
*334 On cross-examination trial defense counsel questioned Barker’s recollection of the flight number. Defense counsel asked Barker: “[Y]ou don’t remember the flight number other than ... looking at the document, right?” Barker answered: “No, ma’am.” On redirect, trial counsel tried to ask whether Barker' had any reason to believe that the actual flight number was not the number printed on the manifest he had consulted, but the defense objected. The military judge then asked Barker: “[D]o you have any way of knowing what the [flight] number was compared to what you just looked at [on the flight manifest]?” Barker responded: “No, ma’am.” The military judge sustained the defense’s objection and Barker was excused.
Next, the Government called Appellant’s company commander, Captain Looney, to testify. Trial counsel asked Looney whether he had traveled to Afghanistan on the same flight with his company, and Looney stated that he did. Then there was the following exchange between trial counsel, Looney, and the military judge:
[TC]: Do you remember what the flight number of that plane was?
[WIT]: I do not recall off the top of my head.
[TC]: Is there anything that might jog your memory?
[WIT]: Like the manifest roster would be something that would have it.
TC: Ma’am, may I approach?
MJ: You may. Captain Looney, did you ... at any point know the flight number without referring to a document?
WIT: No, Ma’am.
MJ: Okay. Then it doesn’t appear as though approaching this witness is going to help refresh his memory because he doesn’t have any independent knowledge of the flight number.
Trial counsel continued to question Looney in an attempt to show that he knew the flight number at some point in the past but could no longer remember it without help. The defense objected to trial counsel’s second attempt to refresh Looney’s recollection with a copy of the flight manifest. The military judge sustained the objection, and trial counsel moved on to other topics.
In addition to First Sergeant Barker and Captain Looney, the Government also put Appellant’s battalion commander and squad leader on the stand. Neither of them testified about the specific flight number of the aircraft on which Main Body 1 of the 54th Engineer Battalion deployed.
The Government also presented a soldier who testified that Appellant said that he did not deploy with his unit because he felt like his squad leader, his platoon sergeant, and First Sergeant Barker “were out to get him.” The Government’s final witness was a soldier who testified that Appellant had told him that the alleged kidnapping by Russians “didn’t happen,” and that during the time of the deployment Appellant “just hid out for a few days.” At the close of the Government’s ease, defense counsel did not move pursuant to Rule for Courts-Martial (R.C.M.) 917 for a finding of not guilty.
The defense’s theme throughout the trial was “the truth is stranger than fiction.” On cross-examination of the Government’s witnesses, trial defense counsel elicited testimony that Appellant transferred into the 370th knowing that the company was about to deploy, that Appellant did not attempt to get out of the deployment during the pre-deployment training, that Appellant had previously deployed to Iraq, and that Appellant was packed and ready to leave for Afghanistan.
During the defense ease, trial defense counsel called three witnesses. The first, Appellant’s former platoon sergeant, testified that Appellant knew he would be deploying when he transferred into the 54th Engineering Battalion. The second witness, who also was a sergeant, testified to an incident in which he was grabbed outside a Bamberg bar, put into the back of a car, robbed, and left several miles away approximately five hours later. The third witness, a detective with the Bamberg police department, testified that he investigated Appellant’s alleged kidnapping and found a piece of rope and footprints that were a possible match for Appellant’s shoes outside of an inn nearby that matched Appellant’s description of the *335 location where he had been released. Appellant did not testify.
After brief deliberations the military judge announced her findings. She found Appellant guilty of making a false official statement, and not guilty of the charges of desertion and willfully disobeying a superior commissioned officer. In regard to the missing movement offense, Charge II and its Specification initially read:
In that Sergeant Michael L. Treat, U.S. Army, did, at or near Bamberg, Germany, on or about 17 November 2010, through design, miss the movement of Flight TA4B702 with which he was required in the course of duty to move.
The military judge announced her findings on this charge and specification as follows:
Guilty, except the words and figures, “Flight TA4B702,” substituting therefor, “the flight dedicated to ... transport Main Body 1 of 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgyzstan.” Of the excepted words and figures, Not Guilty. Of the substituted words and figures, Guilty.
APPELLANT’S ARGUMENT ON APPEAL
Appellant argues that “[t]he military judge’s findings caused a material variance because she convicted [him] of an offense not charged after he successfully defended himself on the charged offense.” Brief for Appellant at 3, United States v. Treat, No. 14-0280/AR (C.A.A.F. Mar. 25, 2014). Appellant further argues that he “thus suffered prejudice because the military judge substantially changed the nature of the offense and denied him the right to prepare and defend against the specification as convicted.” Id. Accordingly, Appellant concludes that the military judge’s findings by exceptions and substitutions constituted a fatal variance, and that this Court must therefore set aside and dismiss the missing movement charge and specification, set aside the sentence, and order a sentence rehearing.
STANDARD OF REVIEW
Whether there was a fatal variance is a question of law reviewed de novo. United States v. Salazar, 44 M.J. 464, 471 (C.A.A.F.1996) (“Questions of law are reviewed de novo.”); United States v. Ivory, 9 C.M.A. 516, 522, 26 C.M.R. 296, 302 (1958) (Quinn, C.J., concurring in the result) (“[Wjhether there was a fatal variance .... was a legal question to be decided by the law officer.”); United States v. Useche, 70 M.J. 657, 661 (N.-M.Ct.Crim.App.2012) (“Whether an amended specification materially deviates from a charged specification is a question of law we review de novo.”).
When defense counsel fails to object at trial, we review a military judge’s findings by exceptions and substitutions for plain error. United States v. Finch, 64 M.J. 118, 121 (C.A.A.F.2006).
DISCUSSION
Rule for Courts-Martial (R.C.M.) 918(a)(i) explicitly authorizes a court-martial to make findings by exceptions and substitutions. However, at times this authority lies in tension with an accused’s constitutional right “to receive fair notice of what he is being charged with.” United States v. Girouard, 70 M.J. 5, 10 (C.A.A.F.2011); see also Schmuck v. United States, 489 U.S. 705, 717, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) (“It is ancient doctrine of both the common law and of our Constitution that a defendant cannot be held to answer a charge not contained in the indictment brought against him.”).
In the instant case, Appellant acknowledges that the court-martial had the authority to make findings by exceptions and substitutions, but also avers that the resulting differences between the initial charge sheet and the military judge’s findings constituted a fatal variance because he was not provided fair notice of the crime he ultimately was convicted of committing.[1] However, it *336 is well established that in order “to prevail on a fatal variance claim, an appellant must show both that the variance was material and that he was substantially prejudiced thereby.” United States v. Marshall, 67 M.J. 418, 420 (C.A.A.F.2009) (emphasis added).
It is both clear and uncontested that a variance occurred in the instant case. Therefore, the first question this Court must answer is whether the exceptions and substitutions made by the military judge constituted a “material” variance. The test for whether a variance is material is whether it “substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment of the offense.” Marshall, 67 M.J. at 420 (citation and internal quotation marks omitted). Appellant does not argue, and there is. no basis to conclude, that the military judge’s exceptions and substitutions increased the seriousness of the offense or increased the punishment of the offense. Rather, Appellant solely argues that the military judge’s exceptions and substitutions substantially changed the nature of the offense.
It is a close question as to whether the military judge’s exceptions and substitutions did, indeed, substantially change the nature of the offense. The offense charged continued to be a violation of Article 87, UCMJ, and Appellant knew from the outset of the court-martial proceedings that regardless of how the specific flight was characterized or described, the gravamen of the offense with which he was charged was that he failed to be present on the aircraft with his unit when it deployed from Germany to Afghanistan.
On the other hand, we note that “[i]f a person ... is ordered to move as a passenger aboard a particular ship or aircraft, ... then missing the particular sailing or flight is essential to establishing the offense of missing movement." See Manual for Courts-Martial, United States pt. IV, para. 11.c.(2)(b); cf. United States v. Kapple, 40 M.J. 472, 473-74 (C.A.A.F.1994) (requiring the government to prove that the accused had been ordered to move aboard a specific aircraft). In the original charging document in the instant case, the Government chose to describe the specific aircraft as Flight TA4B702, and thus that specific flight number became an integral part of an element of the offense. Under these circumstances, we decline to hold that only a minor variance occurred.
Although we find that a material variance occurred, that is not the end of our inquiry. Consistent with our long-standing precedent, we must next turn our attention .to the question of whether the material variance in the instant case prejudiced Appellant. Indeed, as we stated in Finch, this Court has “placed an increased emphasis on the prejudice prong” of the fatal variance analysis. 64 M.J. at 121.
“A variance can pi’ejudice an appellant by (1) putting ‘him at risk of another prosecution for the same conduct,’ (2) misleading him ‘to the extent that he has been unable adequately to prepare for trial,’ or (3) denying him ‘the opportunity to defend against the charge.’ ” Marshall, 67 M.J. at 420 (quoting United States v. Teffeau, 58 M.J. 62, 67 (C.A.A.F.2003)). Appellant argues that the last minute changes made by the military judge denied him the opportunity to adequately prepare his defense and defend against the missing movement charge.
This Court looks closely at the specifics of the defense’s trial strategy when determining whether a material variance denied an accused the opportunity to defend against a charge. In so doing, we consider how the defense channeled its efforts and what defense counsel focused on or highlighted. Marshall, 67 M.J. at 421; Teffeau, 58 M.J. at 67; United States v. Lovett, 59 M.J. 230, 236 (C.A.A.F.2004).
In the instant case, Appellant’s defense was squarely focused on the assertion that he was prevented from moving with the 370th Sapper Company because he was kidnapped. Trial defense counsel did not claim in any *337 manner that Appellant was not present on the date of his unit’s movement because he was unaware of the specific aircraft he was supposed to be on or the unit he was supposed to move with. Rather, right from the beginning of the ease, Appellant channeled his efforts into convincing first the investigators and then the court-martial that, as stated by defense counsel in her opening statement, Appellant “did not intend to miss the movement, but he was prevented from going with his unit ... because of what had happened to him.”
While trial defense counsel did mention the lack of evidence of the flight number in her closing argument, she did not channel her efforts into disproving the Flight TA4B702 element. Furthermore, despite citing the lack of proof that it was specifically Flight TA4B702 that Appellant missed, trial defense counsel did not move pursuant to R.C.M. 917 for a finding of not guilty on that particular charge.
Importantly, the defense has not identified for this Court any different trial strategy it might have employed if Appellant originally had been charged with “missing the flight dedicated to transport Main Body 1 of 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgyzstan.” All indications are that Appellant’s defense of impossibility due to kidnapping would have remained precisely the same whether or not he was charged per the original specification or per the exceptions and substitutions, and we see no reasonable possibility that the verdict in this case would have been any different. Accordingly, we find Appellant was not denied the opportunity to defend against the charge on which he was convicted. We therefore hold that the variance created by the military judge, although material, did not prejudice Appellant and thus was not fatal.[2]
DECISION
The decision of the United States Army Court of Criminal Appeals is affirmed.

. We do not find that, pursuant to the provisions of R.C.M. 905(e), waiver applies here. First, during his closing argument on the merits, Appellant challenged the Government’s theory of the case regarding the flight number. Second, the Army Court of Criminal Appeals held that *336 Appellant did not waive this issue at trial, and the Government did not appeal this adverse decision to this Court.

. When counsel fails to object at trial, we review a military judge’s findings by exceptions and substitutions for plain error. Finch, 64 M.J. at 121. Under plain error review, Appellant has the burden of demonstrating that: (1) there was error, (2) the error was plain or obvious, and (3) the error materially prejudiced a substantial right of the accused. Id. Regardless of whether the error in the instant case was "plain or obvious,” Appellant cannot prevail because he has not successfully established the third prong— material prejudice to a substantial right.