*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
HOLIFIELD, KIRKBY, and GANNON
Appellate Military Judges

———————————

**UNITED STATES**
*Appellee*

**v.**

**Sara B. TRICKETT**
Lieutenant Junior Grade (O-2), U.S. Navy
*Appellant*

**No. 202300133**

———————————

Decided: 5 March 2025

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Hayes Larson (arraignment and motions)
Donald R. Ostrom (trial and post-trial)

Sentence adjudged 10 February 2023 by a general court-martial convened at Naval Station Norfolk, Virginia, consisting of officer members. Sentence in the Entry of Judgment: a reprimand and forfeiture of $1,000.00 pay per month for five months.

For Appellant:
*Major Colin W. Hotard, USMC (on brief)*
*Lieutenant Commander Marc D. Hendel, JAGC, USN (argued)*

For Appellee:
*Mr. Brian K. Keller (on brief)*
*Lieutenant Commander James P. Wu Zhu, JAGC, USN (on brief)*
*Commander John T. Cole, JAGC, USN (argued)*

*6 March 2025: Administrative Correction to reflect who were Appellate Counsel on brief for the United States*

Judge GANNON delivered the opinion of the Court, in which Chief Judge HOLIFIELD and Senior Judge KIRKBY joined.[1]

————————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

————————————————

GANNON, Judge:

A panel of officer members convicted Appellant, contrary to her pleas, of one specification of assault consummated by a battery, one specification of conduct unbecoming of an officer, and one specification of fraternization in violation of Articles 128, 133, and 134, Uniform Code of Military Justice [UCMJ].[2] This case is before us on direct appeal pursuant to Article 66(b)(1), UCMJ.

Appellant was initially charged with aggravated sexual contact for touching the breast of her enlisted subordinate, Fire Controlman Petty Officer First Class [FC1] S.M., by using unlawful force. At trial, FC1 S.M. testified that Appellant touched her "upper chest" rather than her breast. The military judge *sua sponte,* entered a finding of not guilty to the charge of aggravated sexual contact because "upper chest" is not an enumerated body part in the statute.[3] Over Appellant's objection, the military judge then instructed the members on the offense of assault consummated by a battery for touching FC1 S.M.'s "upper chest." Here, within the second assignment of error, Appellant argues that the change from "breast" to "upper chest" constituted a fatal variance. We agree.[4]

———————————

[1] The Court held oral argument at the U.S. Naval Academy on 22 January 2025.

[2] 10 U.S.C. §§ 928, 933, 934.

[3] UCMJ, Article 120(g)(2).

[4] Appellant raised two assignments of error [AOE] which we rephrase as follows: (1) whether Appellant was acquitted of the purported lesser included offense of assault consummated by a battery when the military judge sua sponte acquitted her of aggravated sexual contact pursuant to Rule for Courts-Martial [R.C.M.] 917 and (2) whether Appellant's conviction for assault consummated by a battery should be set aside because the offense is not a lesser included offense of aggravated sexual contact. We do not reach either AOE given our resolution to the issue of variance.

## I. BACKGROUND

Appellant was a division officer aboard *USS Bulkeley*. She was struggling with her marriage and developed an attraction to FC1 S.M., her subordinate leading petty officer. Appellant's affinity for FC1 S.M. was gradual and one-sided.

On 6 November 2020, Sailors in Appellant's division, including FC1 S.M., held a morale event. The group split into two groups following the event; the enlisted members went to a local bar, whereas Appellant went to a housewarming party for a fellow junior officer. Late into the evening, Appellant invited FC1 S.M. and the enlisted members to the housewarming party. The Sailors accepted and joined Appellant at the party. Shortly after arriving, FC1 S.M. determined that the enlisted sailors should not have come so she decided to leave.

FC1 S.M. stopped to use the bathroom before leaving the party. Appellant went into the bathroom while FC1 S.M. was inside and seated on the toilet. Appellant locked the door and confided in FC1 S.M. about her marital issues. The conversation lasted approximately five to ten minutes. As FC1 S.M. tried to leave, Appellant pushed her against the wall, covered her mouth, and whispered in her ear "shh, shh, it's okay, everything's going to be okay."[5] Appellant then kissed "down [FC1 S.M.'s] neck and . . . chest."[6] FC1 S.M. managed to get her phone and send a picture to a fellow Sailor, who eventually gained access into the bathroom, which allowed FC1 S.M. to leave.

Following the incident, Appellant called FC1 S.M. over thirty times, showed up at her house unannounced while FC1 S.M. was away, and sent numerous text messages referring to FC1 S.M. by her first name and as "babe." The messages included, but were not limited to the following:

- "I'm about to punch you [Mf]"

- "I need you"

- "I'm about to lose my House lol"

- "I seriously want to hold you."

- "I seriously can't sleep. I need to hear something from you"

Appellant continued to message and contact FC1 S.M. even after she asked Appellant to "[p]lease just stop."[7]

---

[5] R. at 351.

[6] R. at 352.

[7] Pros. Ex. 3.

Ultimately, Appellant was charged with aggravated sexual contact, alleging that Appellant touched FC1 S.M.'s *breast.* Appellant was also charged with conduct unbecoming of an officer for wrongfully entering the bathroom occupied by FC1 S.M. and fraternization for inviting and socializing with the enlisted Sailors at the housewarming party.

At trial, FC1 S.M. testified that Appellant touched her "upper chest" while in the bathroom. After the presentation of evidence and as counsel were discussing instructions, trial defense counsel requested the trial court instruct the members on the definition of "breast" found in 18 U.S.C. § 1801(b).[8] The military judge took a brief recess and then indicated that he was going to sua sponte enter a finding of not guilty pursuant to R.C.M. 917. Prior to ruling on the motion, the military judge briefly discussed whether there was a lesser included offense. The Government had previously told the military judge that there were no lesser included offenses, but now indicated that assault consummated by a battery was a lesser included offense.[9] Before hearing argument from the parties on the issue of the lesser included offense, the military judge "enter[ed] a finding of not guilty" for the offense of aggravated sexual contact.[10]

Over Appellant's objection, the military judge then directed the members to consider assault consummated by a battery as a lesser included offense of aggravated sexual contact.[11] The military judge told the members that he "found the accused not guilty of Specification 1 of Charge I" but there was a lesser included offense.[12] The military judge instructed the members to line through Specification 1 of Charge I then proceeded to instruct them on the elements of assault consummated by a battery, substituting the words "upper chest" for "breast."[13]

---

[8] R. at 625.

[9] R. at 619–20.

[10] R. at 636.

[11] R. at 641.

[12] R. at 674.

[13] R. at 674.

## II. DISCUSSION

"A variance between pleadings and proof occurs when the evidence adduced at trial establishes the commission of a criminal offense but the proof does not strictly conform to the offense alleged in the specification."[14] Whether a variance is fatal is a question of law reviewed de novo.[15] In order to prevail on a fatal variance claim, Appellant "must show both that the variance was material and that [she] was substantially prejudiced thereby."[16]

### A. Material Variance

#### 1. Law

"The test for whether a variance is material is whether it 'substantially changes the nature of the offense, increases the seriousness of the offense, or increases the punishment of the offense.'"[17] "Minor variances, such as the location of the offense or the date upon which an offense is allegedly committed do not necessarily change the nature of the offense and in turn are not necessarily fatal."[18] Conversely, changes to the offense's "core" constitute a substantial change to the nature of the offense and are material.[19]

An example of a material variance is found in *United States v. Treat*, where Sergeant Treat was charged with missing movement for missing "Flight TA4B702," but was found guilty of missing "the flight dedicated to transport Main Body 1 of 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgyzstan."[20] The United States Court of Appeals for the Armed Forces [CAAF] noted that this was a "close question" but nonetheless held that the variance was material because (1) the President's interpretation of the offense in the Manual for Courts-Martial said that "missing *the particular . . . flight* is essential to establishing the offense of missing movement" and (2) the government decided to charge the specific flight number, which made it

---

[14] *United States v. Lee*, 1 M.J. 15, 16 (1975).

[15] *United States v. Treat*, 73 M.J. 331, 336 (C.AA.F. 2014) (citation omitted).

[16] *Id.* 335–36 (quoting *United States v. Marshall*, 67 M.J. 418, 420 (C.A.A.F. 2009)).

[17] *Id.* at 336.

[18] *United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003) (citing *United States v. hunt*, 37 M.J. 344, 347–48 (C.M.A. 1993); *United States v. Parker*, 54 M.J. 700, 711 (A. Ct. Crim. App. 2001); *United States v. Willis*, 50 M.J. 841 (A. Ct. Crim. App. 1999).

[19] *See, United States v. Finch*, 64 M.J. 118, 122 (C.A.A.F. 2006).

[20] *Treat*, 73 M.J. at 332–33.

"an integral part of an element of the offense."[21] Similarly, the appellant in *United States v. Wray* was charged with larceny for wrongfully *taking* an item, but was found guilty of larceny for wrongfully *withholding* the same item.[22] The United States Court of Military Appeals reversed his conviction and found the variance to be material because the offenses of larceny by wrongfully taking and larceny by wrongfully withholding were distinct.[23]

On the other hand, as an example of a non-material variance, the military judge in *United States v. Finch* found Staff Sergeant Finch guilty of conspiracy by exceptions and substitutions, changing the overt act of the charged offense.[24] The CAAF held that this did not constitute a change to the offense's "core" because an overt act is a supporting element to prove the gravamen of the offense: "the agreement to commit a crime."[25] Recently, this Court reached a similar conclusion in *United States v. Tarin.*[26] Lance Corporal Tarin was charged with striking another with his "hand," but was found guilty of striking another with his "upper body."[27] We held that this variance was not material because the core of the offense was the "bodily harm to the victim" rather than the means which the bodily harm was inflicted.[28]

### 2. Analysis

The variance here was material because the change from "breast" to "upper chest" affected the nature of the offense. Congress enumerated various parts of the body in Article 120(g)(2), such as "groin, breast, inner thigh, or buttocks."[29] Notably absent from the enumerated body parts is "chest."[30] By choosing to charge "breast" and choosing to charge the touching as an Article 120 offense, the Government made the touched body part the gravamen of the offense. This result may have been different had the variance concerned the

---

[21] *Id.* at 225–36.

[22] 17 M.J. 375, 376 (C.M.A. 1984).

[23] *Id.*

[24] 64 M.J. at 121–22.

[25] *Id.* at 122.

[26] No. 202300140, 2025 CCA LEXIS 21 at *5–12 (N-M. Ct. Crim. App. January 23, 2025) (unpublished).

[27] *Id.* at *3–5.

[28] *Id.* at *10–11.

[29] 10 U.S.C. § 920(g)(2).

[30] *Id.*

means of touching rather than the location of the offensive touching itself. This result may also have been different had the variance changed from one statutorily enumerated body part to another (i.e. groin to inner thigh). But in our view, and as the Government conceded during oral argument, the variance from "breast" to "upper chest" changed the category of offense. This change makes this case unlike *Finch* and *Tarin* and more akin to *Treat* and *Wray*. As a result, the variance substantially changed the nature of the offense thus making it a material variance.

### B. Prejudice

For a material variance to be fatal, an appellant must demonstrate substantial prejudice.[31] Not every material variance results in prejudice.[32] Appellant is prejudiced if the variance: (1) put her at risk of another prosecution of the same conduct; (2) misled her to the extent that she had been unable to adequately prepare for trial; or (3) denied her the opportunity to defend against the charge.[33] We look "closely at the specifics of the defense's trial strategy when determining whether a material variance denied an accused the opportunity to defend against a charge. In doing so, we consider how the defense channeled its efforts and what defense counsel focused on or highlighted."[34]

Appellant's trial defense strategy was to attack FC1 S.M.'s credibility *and* argue that the Government failed to prove the gravamen of the offense. Under the unique facts of this case, we find that Appellant suffered prejudice in that she was misled to the extent that she was unable to adequately prepare for trial and was denied the opportunity to defend against the charge as varied. Accordingly, the variance here was fatal and her conviction for assault consummated by a battery must be dismissed.

---

[31] *Treat*, 73 M.J. at 335–36.

[32] *Id.* at 336–37 ("Appellant was not denied the opportunity to defend against the charge on which he was convicted."); *see also Tarin*, 2025 CCA LEXIS 21 at *11 ("The variance did not change the viability of the arguments Defense presented at trial."); *see also United States v. Dailey*, 37 M.J. 1078, 1080 (N.M.C.M.R. 1993) ("we fail to see how the nature of the harm could have affected the appellant's preparation for trial since the defense theory of the case was based on the appellant's contention that he never actually struck the victim with the pipe.").

[33] *Teffeau*, 58 M.J. at 67.

[34] *Treat*, 73 M.J. at 336 (citations omitted).

### C. Sentence Reassessment

We have "broad discretion to cure prejudicial error by reassessing [Appellant's] sentence" in accordance with the factors provided in *United States v. Winckelmann.*[35] Those factors include: (1) whether there is a dramatic change in the penalty landscape and exposure; (2) whether an appellant chose sentencing by members or a military judge alone; and (3) whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses; and (4) whether the remaining offenses are the type that judges of the courts of criminal appeals have the experience and familiarity with to reliability determine what sentence would have been imposed at trial.[36]

Given our familiarity with the two remaining offenses, we find that we can reliably reassess Appellant's sentence.

There is little change to the sentencing landscape by setting aside Appellant's conviction for assault consummated by a battery. That offense had the lowest punitive exposure of the three offenses that Appellant was sentenced for. Moreover, she was not adjudged a dismissal, confinement, or any restriction. All of Appellant's convictions relate to her inappropriate and unduly familiar conduct with enlisted Sailors within her division. Appellant also elected to be sentenced by a military judge alone. Lastly, as the Government correctly points out, all presentencing evidence remained admissible and relevant.

Upon reassessment, we find that the sentence adjudged is appropriate under the circumstances.

---

[35] *United States v. Selgado*, 2024 CCA LEXIS 76, *5 (N-M. Ct. Crim. App. 2024) (citing *United States v. Winckelmann*, 73 M.J. 11, 13 (C.A.A.F. 2013)).

[36] *Winckelmann*, 73 M.J. at 13.

### III. CONCLUSION

Specification 1 of Charge I is **DISMISSED.** After careful consideration of the record, the appellate briefs, and oral argument of appellate counsel, we have determined that the remaining findings and sentence as reassessed are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred. The remaining findings and sentence are **AFFIRMED.**

FOR THE COURT:

MARK K. JAMISON
Clerk of Court