# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MORRIS, JUETTEN, and MURDOUGH
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant DAKOTA M. NIXON**
**United States Army, Appellant**

ARMY 20240069

Headquarters, 1st Infantry Division and Fort Riley
Steven C. Henricks, Scott A. Oravec, and Jacqueline L. Emanuel, Military Judges
Colonel Lisa M. Satterfield-Scott, Staff Judge Advocate

For Appellant: Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Beau O. Watkins, JA; Captain Amber L. Bunch, JA (on brief).

For Appellee: Colonel Richard E. Gorini, JA; Major Justin L. Talley, JA; Major Elizabeth F. Vieyra, JA (on brief).

4 September 2025

------------------------------------
MEMORANDUM OPINION
------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MURDOUGH, Judge:

Appellant raises one assignment of error that merits both discussion and relief. We find that the court-martial's guilty finding by exceptions and substitutions created a fatal variance. We therefore set aside the finding, dismiss the affected charge and specification, and reassess the sentence.

An enlisted panel, sitting as a general court-martial, convicted appellant contrary to his pleas, of two specifications of domestic violence, in violation of Article 128b, Uniform Code of Military Justice, 10 U.S.C. § 928b [UCMJ]. The panel found appellant not guilty of abusive sexual contact, in violation of Article

120, UCMJ, among other charges and specifications.[1] The military judge sentenced the accused to be discharged with a bad-conduct discharge, to be confined for 17 days, and to be reduced to the grade of E-4. The convening authority took no action on the findings and approved the sentence.

## BACKGROUND

### A. *The Government's Theory of the Case*

Appellant and the victim were at all relevant times married. They cohabited at prior duty stations, but when they were each reassigned to Fort Riley, Kansas in the fall of 2021, they lived separately.

Relevant to this appeal, Specification 5 of Charge I[2] alleged that the appellant:

did, at or near Junction City, Kansas, on or about 30 January 2022, commit a violent offense against [the victim], the spouse of the accused, to wit: unlawfully touching, pushing, and grabbing [the victim] on her body with his hands, in violation of Article 128, UCMJ.

The Specification of Charge II alleged that appellant, in violation of Article 120 of the UCMJ:

did, at or near Junction City, Kansas, on or about 8 November 2021, touch the inner thigh and buttocks of [the victim], with his hand with

---

[1] The panel also found appellant not guilty of two other specifications of domestic violence and a specification of child endangerment, in violation of Article 119b, UCMJ.

[2] Appellate defense counsel appear to assert error in the Statement of Trial Results (STR) concerning the disposition of the specifications. We find no substantive error in the way the specifications of Charge I are reflected in the STR. Initially, Charge I, violation of Article 128b, UCMJ, had nine specifications. The convening authority referred only Specifications 2, 3, 4, 7, and 9 of Charge I to the court-martial; the STR refers to these specifications as Specifications 1-5. The STR does not list specifications that were never referred to trial. After arraignment but prior to trial, the trial counsel moved to dismiss Specifications 2 and 3 (referred to on the STR as Specifications 1 and 2), and to renumber the remaining specifications. The flyer and the findings worksheet given to the panel refer to the remaining specifications as 1-3. We refer to the specifications as they appear on the STR, incorporated into the Judgment of the Court.

an intent to abuse, humiliate, harass, and degrade [the victim], without the consent of [the victim].[3]

These were the only two specifications put before the members that allegedly occurred at or near Junction City or in this time frame.

At trial, the victim generally struggled to remember specific dates, which the trial counsel acknowledged in both opening and closing. However, she linked the timeframe of alleged events to the timeframe when she was living at a certain address or in a certain location. With respect to the two specifications in Junction City, the government had consistent, clear, and distinct theories of the case from opening through closing, and the victim was able to remember the dates of these two events with greater precision.[4]

For the abusive sexual contact allegation, the victim testified that the offense occurred in her house, after she allowed appellant to come over to spend time with their daughter while she remained in her bedroom. She testified further that he came into her bedroom, and after some conversation, began to touch her thighs and buttocks. She recorded this incident using her phone, and the recording was admitted at trial without defense objection.

For Specification 5 of Charge I, the government's consistent theory and the victim's testimony were that this occurred in the "end of January" when she picked up the appellant from the airport and took him to her house to pick up his dog. She testified that, against her wishes, he followed her into her house and, after an argument, pushed her against a door.

---

[3] The words "and arouse and gratify the sexual desire of himself" were dismissed prior to trial.

[4] The trial counsel began his line of direct examination on the Specification of Charge II with "Now I want to move ahead to talk about 8 November[] 2021," and she knew immediately to what he referred. When the questioning moved to Specification 5 of Charge I, she began with "In January—the end of January of 2022, it would have been, he was returning home from leave . . . ." and later testified "I don't know the exact day. I know it was, like, probably the very end of January of 2022."

## B. *Instructions and Findings*

The military judge issued a standard variance instruction applicable to all charged offenses, without objection from either side.[5] The government proposed an instruction that assault consummated by a battery[6] was a lesser included offense of the abusive sexual contact charged in the Specification of Charge II. The defense opposed this request; the military judge sided with the defense and did not instruct the members on any lesser included offenses.

The members convicted appellant of Specification 5 of Charge I by exceptions and substitutions. Specifically, the members excepted "on or about 30 January 2022" and substituted therefor "between on or about 1 November 2021 and on or about 30 January 2022," turning the singular date alleged into a date range of approximately three months. The members also found appellant not guilty of the Specification of Charge II, which was alleged to have occurred within the expanded date range for which the members convicted him of domestic violence.

After the announcement of findings and before beginning sentencing proceedings, the defense moved to dismiss Specification 5 on the basis that the findings created a fatal variance. After hearing argument from both sides, the military judge denied the motion.

## LAW AND DISCUSSION

Rule for Courts-Martial [R.C.M.] 918(a) permits the factfinder to enter findings by exceptions and substitutions, but exceptions and substitutions may not be used to substantially change the nature of the offense or to increase the

---

[5] The military judge instructed the members:

> If you have doubt about the time, place, and/or manner in which the injuries described in the specifications were inflicted, but you are satisfied beyond a reasonable doubt that the offense(s) were committed at a time, place, or in a particular manner that differs slightly from the exact time, place, and/or manner in the specifications, you may make minor modifications in reaching your findings by changing the time, place, and/or manner in which the alleged injuries described in the specifications were inflicted, provided that you do not change the nature or identity of the offense.

*See* Dep't of Army, Pam. 27-9, Military Judges' Benchbook, para. 7-15 n.1 (29 Feb. 2020).

[6] UCMJ art. 128(a)(3).

seriousness of the offense or its maximum punishment. "A variance between pleadings and proof exists when evidence at trial establishes the commission of a criminal offense by the accused, but the proof does not conform strictly with the offense alleged in the charge." *United States v. Allen*, 50 M.J. 84, 86 (C.A.A.F. 1999) (internal citation omitted).

We review de novo as a matter of law the question of whether a variance is fatal. *United States v. Treat*, 73 M.J. 331, 335 (C.A.A.F. 2014) (internal citation omitted). "To prevail on a fatal-variance claim, appellant must show that the variance was material and that it substantially prejudiced him." *United States v. Hunt*, 37 M.J. 344, 347 (C.M.A. 1993).

*A. Materiality*

A variance is material when, in contravention of R.C.M. 918(a), it "substantially changes the nature of the offense, increases the seriousness of the offense, or increases [its] punishment . . . ." *United States v. Finch*, 64 M.J. 118, 121 (C.A.A.F. 2006) (citing *United States v. Teffeau*, 58 M.J. 62, 66 (C.A.A.F. 2003)). The appellant here argues only the first, that the variance substantially changed the nature of the offense of which he was convicted.

We agree. While "[m]inor variances, such as the location of the offense or the date upon which an offense is allegedly committed, do not necessarily change the nature of the offense . . . ." a variance is material when the findings amount to a conviction for a "different incident than that described in the specification upon which Appellant was arraigned." *Teffeau*, 58 M.J. at 66-67.[7] In this case, the government's theory and victim's testimony was consistent that the domestic violence offense alleged in Specification 5 occurred in January 2022, and that the abusive sexual contact offense occurred 8 November 2021. Both trial and defense counsel in closing argument described Specification 5, which they linked to the victim's description of returning from the airport to pick up the dog, as occurring in January 2022. But the date range of the members' modifications to Specification 5 eclipsed the abusive sexual contact offense of which they found him not guilty. And the *actus reus* of Specification 5, "touching, pushing, and grabbing [the victim] on

---

[7] Put another way, is not solely the length of time that determines materiality. We do not assert a bright line rule that, for example, a three-month enlargement of the specification is per se or presumptively material or fatal. We do not address in this opinion any outer limit to the construction "on or about."

the body with his hands,"[8] is broad enough to describe both the government's theory and trial evidence for the abusive sexual contact allegation as well as the domestic violence specification.[9]

In other words, the members' findings are at best ambiguous as to the event for which they convicted the appellant – the November visit to the house or the January airport/dog incident. With two factually distinct allegations occurring at or near Junction City in this expanded time frame, the guilty finding could encompass either allegation. The findings substantially changed the nature of the offense from a singular event in January to multiple possible events over an extended timespan. This variance is material.

*B. Prejudice*

A material variance is prejudicial when, for example, "the variance puts him at risk of another prosecution for the same conduct," when he is "misled to the extent that he has been unable adequately to prepare for trial," or "where the variance at issue changes the nature or identity of the offense and he has been denied the opportunity to defend against the charge." *Id.* at 67 (internal quotation marks and citations omitted). To assess prejudice, we "look[] closely at the specifics of the defense's trial strategy . . . . how the defense channeled its efforts and what defense counsel focused on or highlighted." *Treat*, 73 M.J. at 336 (internal citations omitted).

In this case, when defending against the 8 November abusive sexual contact offense, the defense specifically focused on the precise characteristics of the offense alleged – the touching of the "inner thigh and buttocks" and the "intent to abuse, humiliate, harass and degrade." The defense argued that the video recording, contrary to the government's argument, did not show contact with either the inner thigh or buttocks, and the defense submitted the victim's prior out of court statements (both by omission and contradiction) that the appellant had not touched her inner thigh or buttocks. The defense also argued that circumstantial evidence did not show the appellant acted with the requisite *mens rea* of specific intent.

The military judge's determination, that assault consummated by a battery was not a lesser included offense of the alleged abusive sexual contact, buttressed

---

[8] Further, though the specification alleges three distinct verbs ("touching, pushing, and grabbing,"), the victim's trial testimony for the January dog incident was only that the appellant pushed her against a door. The members did not except either of the other two verbs from their findings.

[9] The additional element of domestic violence, that at the time the victim was the accused's spouse, was not in dispute.

this strategy.[10] *See generally* UCMJ art. 79; *United States v. Armstrong*, 77 M.J. 465, 469 (C.A.A.F. 2018) (an accused is on notice to defend himself against not only the charged offense but also the lesser included offenses). Thus, the appellant did not need to defend against an assault theory of liability. The defense did not need to argue, for example, that the 8 November incident did not happen at all (which would have been a daunting task given the video evidence), or that it was consensual and thus not "unlawful" touching in violation of Article 128, UCMJ. Rather, the defense focused on the precise elements that elevate a "touching" to the level of abusive sexual contact – the specific body parts and the specific intent.[11] The appellant was not prepared for and thus did not defend against the possibility that the members could find insufficient proof for each element of abusive sexual contact yet nonetheless pull open the aperture of a different specification to convict him of the only offense for which there was video evidence.

Having found that the variance was material, we also find that the variance prejudiced the accused by changing the nature of an offense such that he was not given adequate opportunity to defend himself. The variance was fatal, and we must set aside the finding.

### *C. Sentence Reassessment*

Considering the principles articulated *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), we are able to reassess the sentence. Without the 3-day sentence to confinement for Specification 5 of Charge I, we are confident that the military judge would still have imposed a sentence of at least a bad-conduct discharge and reduction to the grade E-4, as well as the 14-day sentence for the remaining finding of guilty.

### **CONCLUSION**[12]

We SET ASIDE the findings of guilty of Specification 5 of Charge I and Charge I; this charge and specification are DISMISSED. We AFFIRM the remaining finding of guilty.

---

[10] Whether the military judge's ruling was correct is not before us on appeal. The appellant and his trial defense team were entitled to rely upon it in forming their defense strategy, particularly in closing argument.

[11] As to Specification 5 of Charge I, the defense strategy was the same as the other domestic violence specifications, an attack on the victim's overall credibility and motives.

[12] We hereby order SEALED Appellate Exhibits I, II, III, and XXVI pursuant to Military Rule of Evidence 412.

We AFFIRM only so much of the sentence as provides for a bad-conduct discharge, confinement for 14 days, and reduction to the grade E-4. We order restored all rights, privileges, and property of which the accused has been deprived by virtue of the portion of the sentence that we set aside.

Judge MORRIS and Judge JUETTEN concur.

FOR THE COURT:

JAMES W. HERRING, JR.
Clerk of Court