# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant MICHAEL L. TREAT**
**United States Army, Appellant**

ARMY 20110402

Seventh U.S. Army Joint Multinational Training Command
Wendy Daknis, Military Judge
Lieutenant Colonel Francisco A. Vila, Staff Judge Advocate

For Appellant:  Colonel Patricia A. Ham, JA; Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA (on brief).

For Appellee:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Robert A. Rodrigues, JA; Captain Daniel H. Karna, JA (on brief).

25 October 2013

-----------------------------------
OPINION OF THE COURT
-----------------------------------

CAMPANELLA, Judge:

A military judge sitting as a special court-martial convicted appellant, contrary to his pleas, of missing movement and making a false official statement in violation of Articles 87 and 107, Uniform Code of Military Justice, 10 U.S.C. §§ 887, and 907 (2006) [hereinafter UCMJ].  The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for three months, and reduction to the grade of E-1.

This case is before us for review pursuant to Article 66, UCMJ.  Appellate defense counsel raised two of assignments of error to this court.  The first assignment of error merits discussion but no relief.  The remaining assignment of error is without merit.

**FACTS**

Appellant was a combat engineer assigned to the 370th Sapper Company, 54th Engineer Battalion, in Bamberg, Germany. The unit was notified during the summer of 2010 that it was to deploy in late 2010 to Afghanistan in support of Operation Enduring Freedom. While the original orders indicated deployment would occur on or about 19 November 2010, appellant was scheduled to deploy with Main Body 1 of his unit on 17 November 2010. Appellant was aware of this date. Not only did he attend unit briefings where this date was announced, appellant trained with his unit, completed all pre-deployment certification and training, and was told the deployment window could be moved forward or delayed by forty-eight to seventy-two hours.

On 17 November 2010, the deployment date was delayed, and the flight appellant was directed to take ultimately occurred on 19 November 2010, two days after his unit was originally scheduled to leave. Appellant was not present for the movement.

The government charged appellant with missing movement in violation of Article 87, UCMJ. Charge II and its Specification alleged appellant:

> did, at or near Bamberg, Germany, on or about 17 November 2010, through design, miss the movement of Flight TA4B702 with which he was required in the course of duty to move.

At trial, appellant's primary defense was he had been abducted on 15 November 2010 at a German bar by Russian-speaking men and not released until 20 November 2010, after the unit's movement had already taken place.

The government did not believe appellant's story to Army criminal investigators and used appellant's statements regarding the abduction as the basis for a charge of making a false official statement in violation of Article 107, UCMJ. Evidence presented at trial showed that appellant confided in at least one soldier that the story of his kidnapping was fabricated. Ultimately, the military judge found appellant guilty and convicted him of making a false official statement.

Regarding the missing movement charge, the military judge found appellant guilty of missing movement by excepting the words "Flight TA4B707" and substituting therefor the words "the flight dedicated to transport Main Body 1 of the 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgzstan."

2

The modified specification read as follows:

> In that Sergeant Michael L. Treat, U.S. Army, did, at Bamberg, Germany, on or about 17 November 2010, through design, miss movement of the flight dedicated to transport Main Body 1 of the 54th Engineer Battalion from Ramstein Air Base, Germany, to Manas Air Base, Kyrgzstan with which he was required in the course of duty to move.

## LAW AND DISCUSSION

In his first assignment of error, appellant alleges a fatal variance exists because the government alleged appellant missed the movement of a particular flight on a specific day but the military judge modified the specification at findings to reflect that appellant instead missed the movement of a particular unit. In response, the government argues that appellant waived this issue at trial, but if not waived, the military judge's modifications did not amount to a fatal variance.[1]

Fundamental due process demands an accused be afforded the opportunity to defend against a charge before a conviction based upon that charge can be sustained. *United States v. Teffeau*, 58 M.J. 62, 67 (C.A.A.F. 2003). Such fundamental due process is violated when an appellant's conviction is predicated upon a different incident than the one originally alleged in the specification. A variance between pleadings and proof exists when evidence at trial establishes the commission of a criminal offense by the accused, but the proof does not conform strictly with the offense alleged in the charge. *United States v. Allen*, 50 M.J. 84, 86 (C.A.A.F. 1999). Although the Rules for Courts-Martial [hereinafter R.C.M.] authorize findings by "exceptions and substitutions," they do not allow for such exceptions and substitutions to be "used to substantially change the nature of the offense." R.C.M. 918(a)(1).

As noted in the discussion of R.C.M. 918(a)(1), "[c]hanging the date or place of the offense may, but does not necessarily, change the nature or identity of the offense." R.C.M. 918(a)(1) discussion. Minor variances "as to the location or date

---

[1] While appellant's defense counsel did not raise any concerns with the military judge about the flight number in a R.C.M. 917 motion or an express objection, we decline to find waiver in this case because appellant's defense counsel challenged the government's theory of the case regarding the flight number in his closing argument on the merits.

of an offense" do not necessarily change the nature of the offense and in turn are not necessarily fatal, especially where the government has made use of the "on or about" language in the charged specification. *Teffeau*, 58 M.J. at 66 (C.A.A.F. 2003) (citing *United States v. Hunt*, 37 M.J. 344, 347- 48 (C.M.A. 1993)). The words "on or about" are "words of art in pleading which generally connote any time within a few weeks of the 'on or about' date." *United States v. Brown*, 34 M.J. 105, 110 (C.M.A. 1992) (internal citations omitted). Therefore, in this case, regarding Charge II and its specification, the difference between the charged language, "on or about 17 November 2010," and the proof that the movement actually occurred on 19 November 2010 does not change the nature or identity of the offense. *Brown* at 110.

In *United States v. Marshall,* 67 M.J. 418 (C.A.A.F. 2009), our superior court stated, "to prevail on a fatal variance claim, an appellant must show both that the variance was material and that he was substantially prejudiced thereby." *Id*. at 420. *See also United States v. Finch,* 64 M.J. 118, 121 (C.A.A.F. 2006); *Hunt,* 37 M.J. at 347; *United States v. Lee,* 1 M.J. 15, 16 (C.M.A. 1975); *United States v. Hopf,* 1 U.S.C.M.A. 584, 586, 5 C.M.R. 12, 14-15 (1952). "A variance can prejudice an appellant by (1) putting 'him at risk of another prosecution for the same conduct,' (2) misleading him 'to the extent that he has been unable adequately to prepare for trial,' or (3) denying him 'the opportunity to defend against the charge.'" *Marshall,* 67 M.J. at 420 (citing *Teffeau,* 58 M.J. at 67).

In this case, appellant argues the military judge's change to the specification was material because it allowed the government to convict him on a theory of liability that was not charged. He further argues that this change prejudiced his right to defend against the specification of which he was convicted. We disagree on both counts.

The offense of "missing movement" was drafted as a specific punitive article following World War II when experience taught that a large number of military personnel "failed to show when *their* units or ships moved as such, perhaps to combat or forward areas. The seriousness of the offense results from the disruption of the scheduling and movement of an integrated, cohesive, perhaps self-sufficient and interdependent group of military men that may well have trained to perform as a unit." 81st Cong., 1st Sess., on S. 857 and H.R. 4080 at 37 (emphasis added). Early cases by and large limited application of the offense to situations where the movement of units or groups of military personnel were involved. *See, e.g., United States v. Jackson,* 5 C.M.R. 429 (A.F.B.R. 1952); *United States v. Burke,* 6 C.M.R. 588 (A.F.B.R. 1952). Since then, application of the offense has been broadened to cover the movement of individual service members, it having been recognized that, absent large-scale training exercises or emergencies requiring the immediate presence of a large force, this is the most common method of movement—moving individuals to a unit rather than moving the unit itself. *See United States v. Graham,* 16 M.J. 460, 464 (C.M.A. 1983). *See also United States v. Johnson,* 3 U.S.C.M.A.

174, 11 C.M.R. 174 (1953); *United States v. St. Ann,* 6 M.J. 563 (N.C.M.R. 1978), *pet. denied,* 7 M.J. 392 (C.M.A. 1979).

Based on these developments, the *Manual for Courts-Martial* was broadened regarding the crime of missing movement and now discusses mode of movement, making specific reference to movement of a unit *and* movement of individuals as passengers aboard ships or aircraft. *Manual for Courts-Martial*, *United States* (2008 ed.) [hereinafter *MCM*], pt IV, ¶ 11.c.(2). With respect to movement of individuals it provides: "If a person is assigned as a crew member or is ordered to move as a passenger aboard a particular ship or aircraft, military or chartered, then missing the particular sailing or flight is essential to establish the offense of missing movement." *Id.* at ¶11 c.(2).(b). With respect to "unit," the *MCM* states if a person is required to move with a unit, the mode of travel is not important, whether it be military or commercial . . . ." *Id.* at ¶11 c.(2).(a).

While the missing movement charge in this case was perhaps inartfully drafted, referring to a particular flight number, the charge was clearly aimed directly at appellant's purposeful missing of his unit's flight. The defense argues that the government prosecution theory changed when the military judge excepted the flight number and substituted a description of what the flight number represented, namely the flight of Main Body 1. The theory of the case, however, remained the same, namely, that the appellant missed his unit's flight upon which he was required to move and that he did so through his own design.

The military judge gave no credence to appellant's kidnapping yarn and found that appellant stayed away from his unit by design during the deployment window and ultimately frustrated all efforts by members of his unit to have him deploy as directed. We concur in that assessment. In light of the facts and circumstances found here, appellant's contention that the government failed to prove a specific flight number moved at all misses the point entirely. The important thing is not whether that specific flight number left, but whether the unit's flight took place at all. It most assuredly did move–without appellant aboard.

Further, the *MCM* states that "knowledge of the exact hour or even the exact date of the scheduled movement is not required. It is sufficient if the approximate date was known by the accused as long as there is a causal connection between the conduct of the accused and the missing of the scheduled movement. Knowledge may be proved by circumstantial evidence." *MCM*, pt IV, ¶11. c.(5). There was sufficient evidence produced in this case to establish appellant's knowledge of the pending flight. Most notably, appellant's company commander testified the unit, including appellant, was aware of the 17 November 2010 date and the deployment window could shift by forty-eight to seventy-two hours. It is clear from the facts before us that appellant had actual knowledge of the unit's flight.

We are not convinced under the facts of this case that the nature of the offense was substantially changed to the extent necessary to establish a material variance. *See generally Finch*, 64 M.J. at 121. However, even if we were to assume that a material variance does exist, appellant has failed to demonstrate prejudice. Appellant is in no danger of double jeopardy in this case. The movement which appellant missed is not in dispute. Moreover, the record of trial is thorough regarding the circumstances surrounding his crimes and protects appellant from subsequent prosecution. Additionally, there is no evidence appellant was unable to adequately prepare for trial or that he was denied the opportunity to defend against the charge. Appellant's explanation as to why he was misled at trial falls short.[2] To the contrary, appellant was aware of the contested issue–that his unit's flight moved without him on or about 17 November 2010. The thrust of appellant's defense at trial was that his "abduction" prevented him from being on this flight with his unit when it departed during the deployment window.

In the court's view, appellant's claim of prejudice is not substantiated, and we, therefore, find no fatal variance in this case.

## CONCLUSION

On consideration of the entire record and the submissions of the parties, we hold the findings of guilty and the sentence as approved by the convening authority are correct in law and fact.

---

[2] Appellant's defense counsel, in matters submitted in their clemency request and pursuant to R.C.M. 1105, alleged: (1) the military judge created a fatal variance when she modified the specification as charged; (2) it was error for the military judge to find beyond a reasonable doubt that the flight occurred on 17 November 2010; and (3) there was insufficient evidence to support a finding of guilty to the charged offense where appellant had no actual knowledge of the movement time. While the staff judge advocate (SJA) responded to the first two allegations, he failed to respond to the third allegation of error in his recommendation or addendum to the convening authority (CA). To the extent this allegation can be construed as legal error, the SJA should have responded. *See* R.C.M. 1106(d)(4). However, pursuant to *United States v. Hill*, 27 M.J. 293, 297 (C.M.A. 1988), we are "free to affirm when a defense allegation of legal error would not foreseeably have led to a favorable recommendation by the [SJA] or to corrective action by the [CA]." Based on the record before us and consistent with this opinion, we find any legal error raised by this allegation lacked merit and would not have resulted in a favorable recommendation by the SJA or any corrective action by the CA.

TREAT—ARMY 20110402

Accordingly, the findings of guilty and the sentence are AFFIRMED.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

7