*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Ryan C. THOMAS, Sergeant**
United States Army, Appellant

**No. 24-0147**
Crim. App. No. 20210662

Argued January 28, 2025—Decided July 7, 2025

Military Judges: G. Bret Batdorff (arraignment)
and Alyssa S. Adams (trial)

For Appellant: *Major Robert W. Rodriguez* (argued); *Colonel Philip M. Staten, Lieutenant Colonel Autumn R. Porter*, and *Jonathan F. Potter*, Esq. (on brief); *Captain Kevin T. Todorow*.

For Appellee: *Major Marc B. Sawyer* (argued); *Colonel Richard E. Gorini* and *Captain Alex J. Berkun* (on brief).

Judge JOHNSON delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Judge HARDY joined.

———————

Judge JOHNSON delivered the opinion of the Court.

Appellant was charged with wrongfully making derogatory statements regarding race in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012),[1] among other offenses. The military judge granted the Government's peremptory strike of a prospective panel member who said that when he had been on the receiving end of racially derogatory comments he had simply ignored them. We granted review to determine whether the military judge abused her discretion by denying Appellant's *Batson* challenge to the peremptory strike. *See Batson v. Kentucky*, 476 U.S. 79 (1986). We hold that the military judge did not abuse her discretion by denying the *Batson* challenge because the Government offered a plausible, facially neutral reason for striking the member and Appellant failed to meet his burden of showing that reason was a pretext for racial discrimination. Accordingly, we affirm the decision of the United States Army Court of Criminal Appeals (ACCA).

## I. Background

Relevant to this appeal, Appellant was charged with three specifications of wrongfully making derogatory statements regarding race (hereinafter the "race specifications") in violation of Article 134, UCMJ. Appellant entered pleas of not guilty to the race specifications and elected to be tried by a panel of members with enlisted representation.

During group voir dire, the military judge asked whether any panel member had ever been the victim of an offense "dealing with potentially racially discriminatory language, gender bias language, [or] religion motivated language." Major (MAJ) SK answered in the affirmative.[2]

---

[1] Except as otherwise noted, all references herein to the UCMJ are to the 2012 edition.

[2] Three other members also answered in the affirmative and described personal experiences with derogatory racial comments. One said he had been "on the receiving end of racist comments" as a teenager more than thirty years earlier, when he

During individual voir dire, MAJ SK described two experiences of "racial discrimination." The first was during his youth growing up in Germany. MAJ SK explained that the "town next over was the hub for the largest neo-Nazi organization in Germany . . . [s]o there was frequent encounters in regards to racial discrimination in certain stores." The second occurred at Fort Polk, Louisiana, where he was "working with civilians as role players[] [a]nd they would ask [his] co-workers how it is to work with the n***er." In response to trial counsel's query how those experiences made him feel, MAJ SK said, "I see the individuals where they're coming from and unless it has a . . . potential professional long term impact, or it impacts me professionally I ignore it and move on."

Defense counsel questioned whether MAJ SK believed "that just saying that word [n***er], in and of itself, is criminal." MAJ SK demurred, explaining, "[t]he context in which it's said, and the context where it comes from absolutely matters." And to the question whether "a white man [can] ever say the word n***er," he affirmed that his response would be "[w]e can talk about this," rather than "how dare you."

After voir dire, the Government exercised its peremptory challenge against MAJ SK. The defense asked the Government to state a race-neutral basis for the challenge (the *Batson* challenge). The Government responded:

> So while Major [SK] was being asked questions
> about being a victim of a similar crime, not only

---

was called an anti-Asian slur. The second, who described himself as "multiracial," had heard racist comments made in his presence, but never directed at him. The third said he was subjected to an equal opportunity complaint after he was falsely accused of making racist comments. All three members affirmed that they could objectively judge the facts in this case notwithstanding their personal experiences. The first two were not challenged by either party. The military judge granted an unopposed defense challenge for cause of the third member, who had articulated a firmly held opinion that a soldier convicted of a sex offense upon a child should receive a punitive discharge.

did he say it would not influence his bias, he seemed to go—in the government's opinion, too far the other way where he sort of minimized the fact. And his attitude seemed like if I can get through this, than [sic] anyone else can as well.

The defense objected to the Government's justification, stating:

I believe that's a misstatement. I think my concern, just from an appellate standpoint, is he at least is [sic] a partially African-American, mixed race. What I'm gathering, I'm speculating, but I believe he is mixed race, African-American/potentially Caucasian. And he seemed to have an objective approach to this process. And my position is because of that this facially neutral reason that the government stated is more of a facade to cover up that approach.

The Government countered the objection, stating:

Your Honor, first just note that this is a case where the accused is white and he's being accused of making negative racial remarks about a black person. So, it doesn't really make sense that the government would have a racial reason to try to remove African-American members of the panel.

And then we just stand by that . . . it wasn't because of his race or because of his attitude when he talked about having encountered similar crimes in the past. He seemed to sort of—he seemed to minimize them and have an attitude that . . . it was something that was just part of life and you just move through rather than consider that they might have a lasting emotional effect.

Just his body language, his attitude when he talked about that, just made the government believe that . . . because of his personal resiliency, he would not consider these crimes, things like cruelty and maltreatment, as seriously as another panel member would.

The defense reiterated the *Batson* challenge:

I don't want to beat a dead horse, but I do believe that *Batson* does apply because of, while my client is a Caucasian male, I still believe that *Batson*

> based on the nature of the allegations themselves, if we're striking potential minority members from the panel because there is a reverse application of *Batson* that is in its progeny in terms of the application thereof.

The military judge summarily denied the *Batson* challenge and granted the Government's peremptory challenge, stating, "Okay. Well, I've considered both of the positions and I find that the government has offered a racially neutral reason for their peremptory challenge, so I'm going to grant that challenge."

After the members were impaneled and excused for the day, the defense made an oral motion to dismiss the race specifications for failure to state an offense. The military judge heard oral argument and ordered briefs on the motion. A month later, she dismissed the race specifications, concluding they "are unconstitutionally vague in light of the fact that they fail to allege language of criminality for otherwise protected First Amendment speech."[3]

Appellant was convicted, pursuant to his pleas, of one specification of failure to obey a lawful general regulation in violation of Article 92, UCMJ, 10 U.S.C. § 892, and one specification of adultery in violation of Article 134, UCMJ. Contrary to his pleas, a panel of officer and enlisted members found Appellant guilty of two specifications of cruelty and maltreatment in violation of Article 93, UCMJ, 10 U.S.C. § 893,[4] and two specifications of sexual abuse of a child in violation of Article 120b, UCMJ, 10 U.S.C. § 920b (2018). The members sentenced Appellant to a dishonorable discharge and confinement for eight years.

---

[3] Appellant was also charged with one specification of wrongfully making a derogatory statement regarding gender in violation of Article 134, UCMJ. This specification was dismissed for the same reason as the race specifications.

[4] The Article 93, UCMJ, specifications alleged cruelty and maltreatment for making derogatory statements regarding one victim's family and another victim's religion.

The ACCA specified the issue whether the military judge abused her discretion by denying Appellant's *Batson* challenge. In a split decision, the ACCA held that while the military judge's one-sentence ruling was "lacking," she did not abuse her discretion in denying the *Baston* challenge. *United States v. Thomas*, No. ARMY 20210662, 2024 CCA LEXIS 154, at *8, 2024 WL 1830206, at *3 (A. Ct. Crim. App. Mar. 29, 2024) (unpublished). The majority reasoned that trial counsel's characterization of MAJ SK as not being able to "appreciate the severity of a number of the specifications he would be required to adjudicate . . . was both plausible and irrespective of [his] race." *Id.* at *7, 2024 WL 1830206, at *3. A dissenting judge concluded that trial counsel's proffered explanation "reinforced race" and therefore the military judge's denial of the *Batson* challenge was in error. *Id.* at *10, 2024 WL 1830206, at *4 (Penland, S.J., dissenting).

We granted review to determine whether the military judge erred by denying Appellant's *Batson* challenge. *United States v. Thomas*, 85 M.J. 141 (C.A.A.F. 2024) (order granting review). For the reasons stated below, we answer the granted issue in the negative and affirm the decision of the ACCA.

## II. Standard of Review

Subject to certain qualifications that we describe below, we review a military judge's decision to deny a *Batson* challenge for an abuse of discretion. *United States v. Williams*, 44 M.J. 482, 485 (C.A.A.F. 1996). A military judge abuses her discretion when her "findings of fact are clearly erroneous, the court's decision is influenced by an erroneous view of the law, or the military judge's decision on the issue at hand is outside the range of choices reasonably arising from the applicable facts and the law." *United States v. Miller*, 66 M.J. 306, 307 (C.A.A.F. 2008) (citation omitted). "An abuse of discretion does not mean that 'this Court merely would reach a different conclusion' but rather that the military judge's ruling was 'arbitrary, fanciful, clearly unreasonable[,] or clearly erroneous.'" *United States v. Tapp*, 85

M.J. 19, 27 (C.A.A.F. 2024) (quoting *United States v. Uribe*, 80 M.J. 442, 446 (C.A.A.F. 2021)).

### III. Law

In *Batson*, the Supreme Court held that the "privilege to strike individual jurors through peremptory challenge[] is subject to the commands of the Equal Protection Clause," which "forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the [prosecution's] case against a black defendant." 476 U.S. at 89. *Batson* established a three-part test to determine whether the government's exercise of a peremptory challenge violates the prohibition on racial discrimination in the jury selection process. *Id.* at 96-98. First, the defendant must make a prima facie showing of purposeful discrimination. *Id.* at 96. Once the defendant has made this showing, the burden shifts to the government to come forward with a race-neutral explanation for the challenge. *Id.* at 97. If the government provides a facially neutral explanation, "[t]he trial judge must determine whether the prosecutor's stated reasons were the actual reasons or instead were a pretext for discrimination." *Flowers v. Mississippi*, 588 U.S. 284, 298 (2019) (citing *Batson*, 476 U.S. at 97-98).

The *Batson* "right to equal protection is a part of due process under the Fifth Amendment; and so it applies to courts-martial, just as it does to civilian juries." *United States v. Santiago-Davila*, 26 M.J. 380, 390 (C.M.A. 1988) (citations omitted). However, in light of the structural differences between courts-martial and civilian trials, this Court has articulated a "modified version of *Batson*" applicable to courts-martial. *United States v. Tulloch*, 47 M.J. 283, 286 (C.A.A.F. 1997).[5]

---

[5] As we noted in *Tulloch* these differences include:

> that (1) "courts-martial are not subject to the jury trial" requirements of the Constitution; (2) military accused are tried by a panel of their superiors, "not by a jury of their peers"; (3) military panels are selected by the commander who convened

This modified standard replaces the first step of the *Batson* analysis with a per se rule: "upon timely objection to a peremptory challenge, a *prima facie* case of discrimination is established." *United States v. Hurn*, 55 M.J. 446, 448 (C.A.A.F. 2001). Once a defendant has made a prima facie case of discrimination, the modified standard places a heightened burden on the government to satisfy the second step of the *Batson* analysis by providing not only a race-neutral explanation, but one that is not "unreasonable, implausible, or that otherwise makes no sense." *Tulloch*, 47 M.J. at 287 (distinguishing Supreme Court precedent focusing on " 'the genuineness of the motive' . . . [t]o the extent that [it] suggests that unreasonable or implausible explanations may suffice in civilian society"); *see also United States v. Finch*, 64 M.J. 118, 129 (C.A.A.F. 2006) (Gierke, C.J., concurring in part and dissenting in part) (noting that "this Court, focusing on the differences between a court-martial and a civilian jury trial, has held that a military defendant is entitled to 'a *reasonable*, racially neutral explanation' for a prosecutor's challenge of a minority member of a court-martial, while a civilian defendant is not" (emphasis added) (quoting *Tulloch*, 47 M.J. at 287)).[6]

---

the court-martial on a best-qualified basis and are not "drawn from a random cross-section of the community"; (4) military counsel are provided with only a single peremptory challenge, in contrast to the numerous peremptory challenges permitted by most civilian jurisdictions; and (5) in civilian jurisdictions, the numerous peremptory challenges are used to "select" a jury, but in courts-martial, a peremptory challenge is used to eliminate those already selected by the convening authority.

47 M.J. at 285-86 (quoting *United States v. Moore*, 26 M.J. 692, 699 (A.C.M.R. 1988) (en banc), *set aside on other grounds and remanded for further proceedings*, 28 M.J. 366, 368-69 (C.M.A. 1989), *rev'd on other grounds following remand,* 30 M.J. 162, 162-63 (C.M.A. 1990)).

[6] Because the Government prevails in this case, we do not address its argument that *Tulloch* should be overturned.

Finally, if the government offers a facially neutral basis for the strike the burden shifts to the accused to prove purposeful discrimination. *Batson*, 476 U.S. at 98. Then, the military judge must "determine whether 'the asserted justification is merely a pretext for intentional race-based discrimination.'" *United States v. Greene*, 36 M.J. 274, 281 (C.M.A. 1993) (quoting *Hernandez v. New York*, 500 U.S. 352, 375 (1991) (O'Connor, J., with whom Scalia, J., joined, concurring in the judgment)).

### IV. Discussion

After Appellant established a prima facie case of racial discrimination by demanding a race-neutral explanation for the Government's peremptory strike against MAJ SK, the military judge found that the Government offered a race-neutral reason. Although she did not explicitly address the third step of the analysis by stating whether the Government's stated reason was merely a pretext for racial discrimination, she implicitly ruled it was not pretextual by stating that she had considered and rejected Appellant's arguments, which included an argument that the reason was pretextual. We conclude the Government offered a reasonable, facially neutral explanation for striking MAJ SK, and Appellant failed to meet his burden to show the Government's reason was pretextual. Therefore, we hold the military judge did not abuse her discretion by granting the peremptory challenge.

Under the first step of the *Batson* analysis, Appellant must establish a prima facie case of racial discrimination. In *Moore*, this Court's predecessor adopted a per se rule that an objection by the accused to trial counsel's peremptory strike of a member of a cognizable racial group shifts the burden to the government to provide a reasonable race-neutral explanation. 28 M.J. at 368; *see Tulloch*, 47 M.J. at 286. In the case before us, trial counsel peremptorily challenged MAJ SK, a prospective panel member who had identified himself as having been the target of racial epithets. Appellant objected, noting that MAJ SK was "at least . . . partially African-American, mixed race"—a characterization the Government does not

dispute. Appellant's objection to the Government's peremptory strike of MAJ SK, a member of a cognizable racial group, satisfied the per se rule.

Turning to the second step of the *Batson* analysis, once trial defense counsel has raised a *Batson* challenge the burden shifts to the government to come forward with a race-neutral explanation that is not "unreasonable, implausible, or that otherwise makes no sense." *Tulloch*, 47 M.J. at 287. A race-neutral reason is "an explanation based on something other than the race of the juror." *Hernandez*, 500 U.S. at 360. Whether a race-neutral explanation is reasonable is a question of law we review de novo. *See United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F. 2003) (holding that a military judge's reasonableness determinations are questions of law reviewed de novo, as "confirmed by the reality that appellate courts frequently review de novo the 'reasonableness' determinations of trial judges in a variety of legal settings"); *see also United States v. Thompson*, 735 F.3d 291, 296 (5th Cir. 2013) ("We review the government's proffered race-neutral explanation as a legal issue *de novo*."); *Stubbs v. Gomez*, 189 F.3d 1099, 1105 (9th Cir. 1999) (reviewing de novo the trial court's holding that the prosecutor's proffered reason for a peremptory challenge was race-neutral); *United States v. Uwaezhoke*, 995 F.2d 388, 394 (3d Cir. 1993) (concluding as a matter of law that the government's explanation for a peremptory strike was facially race-neutral); *United States v. Johnson*, 941 F.2d 1102, 1108 (10th Cir. 1991) (reviewing de novo the prosecutor's "explanation for his actions as a legal issue").

The Government's stated reason for striking MAJ SK was that both his verbal voir dire responses and his attitude "minimized" his experiences as a victim of racially derogatory language, leading the Government to have concerns that he would not take the charged offenses seriously. The defense conceded that this rationale for striking MAJ SK was facially neutral. However, the defense disagreed with the Government's assessment that MAJ SK displayed a lack of objectivity and argued that the proffered rationale was a "façade." The defense argued that

the Government's purported rationale was inextricably tied to MAJ SK's race. The military judge found that the Government offered a racially neutral basis for the strike. She did not make any determination on the record as to the reasonableness of the Government's proffered reason, nor did she rule on the defense's claim that it was pretextual.

After reviewing MAJ SK's voir dire responses and the Government's rationale for striking him from the panel, we conclude that the military judge did not err in finding the Government offered a race-neutral basis for the strike: MAJ SK "seemed to minimize" the seriousness of the charged offenses as "something that was just part of life and you just move through rather than consider that they might have a lasting emotional effect." We acknowledge that the offenses at issue involved the use of racially derogatory language and the prospective member happened to belong to the maligned racial group. However, the Government's explanation focused on MAJ SK's responses to questions about his experiences, and not on his race.[7] The same rationale could have applied equally (and unobjectionably) to any prospective panelist who had experience with misconduct similar to any charged offense. *See, e.g.*, *United States v. Paz*, No. ARMY 20010910, 2004 CCA LEXIS 369, at *4-5, *10, 2004 WL 5862657, at *2-3 (A. Ct. Crim. App. Nov. 2, 2004) (unpublished) (holding that the military judge did not abuse his discretion in granting a peremptory strike of a member where "trial counsel's explanation [that '[i]t seemed like it wasn't a significant deal to him to be involved in drugs'] . . . specifically related to [the member's] attitude toward drugs, the subject of the charges against appellant").

---

[7] We recognize that the underlying basis for MAJ SK's responses was his own life experience as a Black man, but in light of his statements during individual voir dire that he would follow the military judge's instructions, that he does not find discussions of race difficult, and that he would apply an "objective approach" we conclude that MAJ SK's responses do not contradict the Government's race-neutral explanation.

Moreover, we conclude as a matter of law that this stated rationale was not unreasonable, implausible, or otherwise nonsensical, where trial counsel articulated a connection between MAJ SK's perspective on his experiences and how that perspective would impact his ability to faithfully execute his duties to the court-martial, referencing both his "body language" and his "attitude." Specifically, the Government voiced a concern that MAJ SK's personal resilience in the face of conduct similar to the charged offenses could cause him to minimize the seriousness of the offenses. *Cf. Tulloch*, 47 M.J. at 288-89 (explaining that trial counsel's vague reference to the challenge member's demeanor, being he "blink[ed]" and "seemed uncomfortable" without further explanation, did not provide a sufficiently articulated reason to sustain the challenge).

The Government could have described MAJ SK's body language and demeanor in greater detail. Although trial defense counsel objected to the challenge as a "misstatement" he did not present an alternative characterization. If there is a factual dispute about a court member's demeanor "the military judge normally can and should resolve [this] dispute about the factual basis for [the] peremptory challenge." *Id.* at 288. In the absence of any factual dispute as to the court member's body language or demeanor, as in this case, "we accept the trial counsel's interpretation of [the challenged member's] demeanor as credible." *Paz*, 2004 CCA LEXIS 369, at *8, 2004 WL 5862657, at *3. Reviewing de novo the reasonableness of the Government's proffered rationale, we conclude the Government met its burden of providing a reasonable, plausible, race-neutral basis for striking MAJ SK.

Finally, we turn to the third step of the *Batson* analysis: when trial counsel articulates a reasonable race-neutral explanation for a peremptory challenge, the burden shifts to Appellant to prove purposeful discrimination. *Greene*, 36 M.J. at 278 n.2.

Here, although trial defense counsel replied to the Government's assertion that MAJ SK's attitude "minimized" his experiences as a victim of racially derogatory language,

this reply did not demonstrate how the facially neutral re-
sponse was a pretext or demonstrate purposeful discrimi-
nation. Instead, trial defense counsel merely reiterated
that *Batson* applied. Nevertheless, Appellant argues that
the military judge erred either by failing to analyze the
third *Batson* step or by failing to make an express finding
about trial counsel's true motive on the record.

Appellant is correct that the military judge must deter-
mine whether trial counsel's proffered explanation is cred-
ible or merely a pretext for intentional racial discrimina-
tion. *Id.* at 281. "[T]he trial court's decision on the ultimate
question of discriminatory intent represents a finding of
fact of the sort accorded great deference on appeal." *Her-
nandez*, 500 U.S. at 364. Accordingly, we afford the mili-
tary judge's decision "great deference" absent "clear error."
*Williams*, 44 M.J. at 485.

We agree with the CCA that the military judge's analy-
sis in this case was "lacking," and as a result we afford her
decision less deference. *Thomas*, 2024 CCA LEXIS 154, at
*8, 2024 WL 1830206, at *3 (noting that the military
judge's one-sentence ruling was "lacking"). Whereas "an ex-
press ruling on this question is preferred," even absent an
express finding and analysis, we conclude the military
judge implicitly found the Government's stated purpose to
be genuine and not a pretext for purposeful discrimination.
*United States v. Gray*, 51 M.J. 1, 34 (C.A.A.F. 1999).

"[M]ilitary judges are presumed to know the law and to
follow it, absent clear evidence to the contrary." *United
States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997). Thus, a
military judge ruling on a *Batson* challenge is presumed to
know that she must make a finding as to whether a facially
neutral peremptory strike masks a discriminatory purpose.
*United States v. Huff*, No. ACM 37431, 2009 CCA LEXIS
342, at *7, 2009 WL 2997016, at *3 (A.F. Ct. Crim. App.
Sept. 14, 2009) (unpublished); *United States v. Walker*, 50
M.J. 749, 751 (N-M. Ct. Crim. App. 1999). Applying that
presumption, a finding of no purposeful discrimination
may be implied by a military judge's ruling granting a per-
emptory strike even where the military judge failed to state

her findings on the record. *United States v. Chaney*, 51 M.J. 536, 540 (A.F. Ct. Crim. App. 1999) (holding that the military judge's decision to grant a peremptory challenge was not clearly erroneous where the military judge did not make findings as to whether the challenge was a pretext for discrimination but "it is clear from his comments that he determined that the proffered reason was genuine and not unreasonable, implausible, or without sense"), *aff'd*, 53 M.J. 383 (C.A.A.F. 2000); *Walker*, 50 M.J. at 751 (holding that the military judge's ruling on each *Batson* prong was "implicit" in his ruling granting a peremptory strike).

In this case, "[v]iewing this conduct of the [military] judge in its entirety, we conclude that it constitutes an implied ruling on [her] part that trial counsel's explanation was genuine and that [A]ppellant's *Batson* claim was without merit." *Gray*, 51 M.J. at 35; *see Messiah v. Duncan*, 435 F.3d 186, 198 (2d Cir. 2006) (stating a trial judge "need not engage in 'a talismanic recitation of specific words in order to satisfy *Batson*'" (citation omitted)). Appellant challenged the Government's peremptory strike as a facially neutral "façade to cover up" a racially discriminatory purpose for striking MAJ SK. The Government responded that it was motivated by concerns about MAJ SK's attitude toward the charged offenses, not by his race. Ruling from the bench, the military judge stated, "I've considered both of the positions and I find that the government has offered a racially neutral reason for their peremptory challenge, so I'm going to grant that challenge."

In light of the presumption that the military judge knew the law and followed it and given Appellant's failure to expand the argument beyond merely calling the Government's explanation a "façade," we conclude that the military judge's ruling impliedly found trial counsel's race-neutral explanation to be genuine, and not pretextual. *Gray*, 51 M.J. at 35. Finding nothing in the record to undermine the military judge's explicit or implicit findings and no basis for concluding her ruling is "arbitrary, fanciful, clearly unreasonable[,] or clearly erroneous,"

*Tapp*, 85 M.J. at 27,[8] we hold that the military judge's decision to grant the peremptory challenge was not an abuse of discretion.

## V. Judgment

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

[8] Despite our holding that the military judge's ruling was not an abuse of discretion, we encourage military judges and counsel to be thorough in articulating their analysis of *Batson* challenges.